Opinion issued August 21, 2008

 





 











In The
Court of Appeals
For The
First District of Texas
 

 
 
NO. 01-07-00443-CR
  __________
 
PEDRO ANGEL SIERRA, Appellant
 
V.
 
THE STATE OF TEXAS, Appellee
 

 
 
On Appeal from the 184th District Court
Harris County, Texas
Trial Court Cause No. 1070138
 

 
 
O P I N I O N
           The jury found appellant, Pedro Angel Sierra, guilty of aggravated robbery. 
After appellant stipulated to having been convicted of 10 prior offenses, including
seven felonies, the jury assessed a sentence of life in prison and a $10,000 fine. In
two points of error, appellant contends that the trial court improperly admitted
evidence of (1) an eyewitness’s out-of-court identification in the guilt-innocence
phase of trial and (2) his gang affiliation in the sentencing phase of trial.
          We affirm. 
Background
          At 1 p.m. on May 23, 2006, Joseph Richards was at work and noticed a red
truck back into the parking lot. He saw a man with a white tank top get out of the
truck and reach into a broken window of another truck. Richards yelled to his co-worker Mark Mulcahy, the second truck’s owner. The two men ran out to the parking
lot. They were about five feet from appellant when appellant noticed them. Mulcahy
grabbed appellant, who, by then was sitting in his own truck, while Richards ran to
the passenger side of appellant’s truck. Mulcahy held onto the gearshift of
appellant’s truck and had appellant in a headlock when Richards noticed appellant
clutching what appeared to be a knife, but was actually a screwdriver. Appellant
stabbed Mulcahy with the screwdriver, and Richards ran to the back of the truck to
get the license plate number. Mulcahy testified that he was “holding onto [appellant’s
open car] door so he can’t leave. And then [appellant] says, ‘I’m going to kill you,
motherf*****r,’ and lunged out the door trying to stab me [with the screwdriver] a
second time.” The whole incident took about three minutes.  
          Richards and Mulcahy called the police. Richards gave the responding police
officer a description of the attacker as a Hispanic man, shorter than Richards (who
was 6'2"), wearing a tank top, and with a shaved head and tattoos. The next day,
Officers D’Eugenio and Hicks arrived with a photospread. Officer D’Eugenio
testified that Richards and Mulcahy were both in the parking lot when they viewed
the photospread, but D’Eugenio testified that he was “very sure [that Richards] could
not see what was going on” when Mulcahy viewed the photospread. Officer Hicks
testified that he and Officer D’Eugenio separated the witnesses outside and “tried to
put enough distance between them so that anything that was said by either one could
not be overheard.” Hicks testified that Mulcahy “immediately” pointed to appellant’s
photograph, but did not say anything. Hicks then walked over to where Richards was
standing and “explained to [Richards] the exact same procedure; that I would be
showing a photospread, he was simply to indicate which one of the people, if any, in
the photos were the suspect that we were looking for.” (Emphasis added.) Once
Richards looked at all the photographs, he, too, pointed to appellant’s photograph. 
          Mulcahy remembered the out-of-court identification differently and testified
that he was outside in the parking lot with the officer, and Richards was inside the
building. Mulcahy looked at the photospread, and “I looked right at the picture. It
jumped off the page at me. It was fresh in my mind.” Richards had yet another
recollection about the out-of-court identification and testified that the officers told
him and Mulcahy that they “couldn’t be there at the same time,” and they were not
supposed to “say anything to each other.” Richards, however, testified that he saw
Mulcahy view the photospread and point to someone on the photospread, but he did
not hear Mulcahy say anything, and he did not see where on the photospread he
pointed. Richards testified that, when it was his turn, they showed him the
photospread, and it took him “a split second” to identify the appellant. He “just
remembered his eyes.”
          At trial, Richards testified that his in-court identification of appellant was based
on his own independent recollection of what he saw on May 23, 2006, and he would
have recognized appellant in court even if he had never been shown the photospread. 
Richards testified that “I got a look at him. As I was driving [sic] him, I saw him
through the back windows. I saw him as we were walking up to him and he was
getting back into his truck. I saw him when [Mulcahy] had him in a headlock, and
I was looking directly at him. I saw him when I was in the passenger’s side door, and
I saw him as he was looking back at us drive away at 2 miles an hour.”


 
          Appellant’s red truck with the damaged driver’s door was found with the same
license number that Richards had noted. Appellant was found guilty of aggravated
robbery.
Out-of-Court Identification
          In point of error one, appellant asserts that the trial court erred in admitting
evidence of Richard’s out-of-court identification of appellant. Specifically, appellant
contends that the identification process was overly suggestive.
          We apply a de novo standard of review to determine whether an identification
procedure was so impermissibly suggestive that it gave rise to a very substantial
likelihood of misidentification. Cienfuegos v. State, 113 S.W.3d 481, 491 (Tex.
App.—Houston [1st Dist.] 2003, no pet.). The Due Process Clause of the Fourteenth
Amendment of the United States Constitution protects an accused from the admission
of a pretrial identification into evidence if it is “so suggestive and conducive to
mistaken identification that subsequent use of that identification at trial would deny
the accused due process of law.” Barley v. State, 906 S.W.2d 27, 32–33 (Tex. Crim.
App. 1995). When challenging the admissibility of a pretrial identification, an
accused has the burden to show, based on the totality of the circumstances and by
clear and convincing evidence, that (1) the pretrial identification procedure was
impermissibly suggestive and (2) it created a substantial likelihood of irreparable
misidentification. Id. Under the second step, “reliability is the linchpin” in
determining the admissibility of identification testimony. Manson v. Brathwaite, 432
U.S. 98, 114, 97 S. Ct. 2243, 2253 (1977).
          Appellant complains that Richards saw Mulcahy view the photospread and saw
Mulcahy point to a photograph in the photospread and that the police officers never
informed them that it was possible that the suspect was not included in the
photospread.
          There are three versions of the events surrounding the out-of-court
identification. First, Mulcahy testified that Richards stayed inside while Mulcahy
viewed the photospread. Second, Richards testified that he saw Mulcahy point to a
picture in the photospread. Third, Officer Hicks testified that both Mulcahy and
Richards were separated outside during the lineup, and Officer D’Eugenio, who was
standing with Richards while Mulcahy viewed the photospread, testified that he was
“very sure” Richards could not see Mulcahy reviewing the photospread. 
          The discrepancies in the testimony required a factual determination, and we
“afford almost total deference to a trial court’s determination of the historical facts
that the record supports especially when the trial court’s fact findings are based on
an evaluation of credibility and demeanor.” See ex parte Peterson, 117 S.W.3d 804,
819 (Tex. Crim. App. 2003). Viewing the facts in the light most favorable to the trial
court’s ruling, the evidence shows that the two witnesses were separated when the
photospread was shown and that Richards did not see Mulcahy view the photospread. 
See id. Also, Hicks testified that when he walked over to where Richards was
standing, he “explained to [Richards] the exact same procedure; that I would be
showing a photospread, he was simply to indicate which one of the people, if any, in
the photos were the suspect that we were looking for.” (Emphasis added.) Therefore,
the evidence shows that the witnesses were informed that the suspect may not be
included in the photospread. We hold that the pretrial identification procedure was
not impermissibly suggestive.
          We also conclude that, even if it was impermissibly suggestive, the lineup did
not give rise to the substantial likelihood of irreparable misidentification when
analyzed under the factors identified in Neil v. Biggers, 409 U.S. 188, 93 S. Ct. 375
(1972). The Court of Criminal Appeals has held that five nonexclusive Biggers
factors should be “weighed against the corrupting effect of any suggestive
identification procedure in assessing reliability under the totality of the
circumstances.” Loserth v. State, 963 S.W.2d 770, 772 (Tex. Crim. App. 1998)
(citing Biggers, 409 U.S. at 199, 93 S. Ct. at 382–83).       These factors include (1) the
opportunity of the witness to view the criminal at the time of the crime; (2) the
witness’s degree of attention; (3) the accuracy of the witness’s prior description of the
criminal; (4) the level of certainty demonstrated by the witness at the confrontation;
and (5) the length of time between the crime and the confrontation. Id. We review the
application of these factors under a de novo standard. Id.
          Appellant concedes that “the last two criteria admittedly weigh in favor of the
admissibility of the identification in that Richard[s] testified he was positive that
Appellant was the culprit when he viewed the photospread the day after the incident.” 
Richards’ testimony reflects that his identification of appellant was based on his own,
independent recollection of what he saw on May 23, 2006, and that he had ample
opportunity to observe appellant that day. Richards also described appellant as a
Hispanic man, shorter than Richards, wearing a tank top, and with a shaved head and
tattoos. Appellant contends that, “although this description matches Appellant’s
characteristics, the description is hardly specific.” Having considered the Biggers
factors and all issues of historical fact—viewed deferentially in a light favorable to
the trial court’s ruling and weighed de novo against “the corrupting effect” of the
allegedly suggestive pretrial identification procedure—we conclude that the trial
court did not err in allowing the identification into evidence. See Ibarra v. State, 11
S.W.3d 189, 195–96 (Tex. Crim. App. 1999) (citing Loserth v. State, 963 S.W.2d
770, 773–74 (Tex. Crim. App. 1998)).
          We overrule appellant’s first point of error.
 
Gang Affiliation
          In his second point of error, appellant argues the trial court improperly
admitted evidence of his gang affiliation. Appellant claims that the State failed to
adequately prove that he was a gang member, and he claims that the trial court erred
by admitting evidence of his gang membership without instructing the jury that it was
not required to determine whether he committed the bad acts engaged in by the gang
and that it should limit its consideration of his alleged gang membership to an
assessment of his reputation or character. 
Evidence of Gang Affiliation Generally Admissible
          An appellate court may not disturb a trial court’s evidentiary ruling absent an
abuse of discretion. Rivera v. State, 808 S.W.2d 80, 96 (Tex. Crim. App. 1991). A
trial court abuses its discretion when it acts outside the zone of reasonable
disagreement. Montgomery v. State, 810 S.W.2d 372, 391 (Tex. Crim. App. 1990)
(op. on reh’g).
          Appellant’s arguments rest upon the Court of Criminal Appeal’s 1995 opinion
in Beasley v. State, in which the Court reviewed the relevant case law and statues in
effect at that time and held that it was not error for the trial court to have admitted
testimony at the punishment phase regarding the defendant’s affiliation with a gang
to show the defendant’s character. Beasley v. State, 902 S.W.2d 452, 456 (Tex. Crim.
App. 1995). The Beasley opinion allowed admission of evidence regarding a
defendant’s membership in a gang—if it did not link the accused to the bad acts or
misconduct generally engaged in by gang members—so long as the fact finder was
(1) provided with evidence of the defendant’s gang membership, (2) provided with
evidence of character and reputation of the gang, (3) not required to determine if the
defendant committed the bad acts or misconduct, and (4) asked only to consider
reputation or character of the accused. 902 S.W.2d at 457.  
          Appellant essentially complains that none of the four Beasley prongs was met,
and that the evidence of his gang membership was therefore improperly admitted. 
We agree with appellant that the last two of the four Beasley prongs were not satisfied
in this case, but we note that Beasley is not the only gate through which such
evidence may be admitted.
          The first two prongs of Beasley—that the jury should be provided with
evidence of both the defendant’s gang membership and the character and reputation
of the gang—were satisfied by the testimony of Officer Taylor, a 12-year veteran with
the Houston Police Department, who was at one time assigned to the Central
Divisional Gang Unit. 902 S.W.2d at 457. During the punishment phase, Officer
Taylor testified that he was trained to look for certain characteristics to determine if
someone is in a gang. Officer Taylor was asked if he was familiar with “a criminal
gang known as the Texas Syndicate.” He said that he was, and appellant objected to
any further testimony regarding appellant’s gang affiliation because “any probative
value is outweighed by prejudicial effect.” Officer Taylor testified that he concluded
appellant was a member of a gang because of “self admission, . . . identification of
an individual from reliable person, . . . [and] he was arrested with other associates,
with a known street gang member.” He also had tattoos that indicated he was a
member of a gang. Appellant then objected to Taylor’s opinions because “basically
what the officer has testified is conclusory. It’s just his statement. There is no facts
to back up or where he came up with these conclusions.” Appellant was allowed to
conduct a voir dire examination of Taylor who testified that, among other things, he
concluded that appellant was a member of the Texas Syndicate because he saw the
affiliation in the Texas Department of Criminal Justice database. He also spoke with
Sergeant Muniz at the Department of Public Safety who informed him that appellant
was a member of the Texas Syndicate. Officer Taylor testified that appellant had
been arrested, for another offense, along with another person believed to be a gang
member. Appellant has frequented Vara’s Sports Lounge, which is a known
“hangout” for the Texas Syndicate. Officer Taylor also looked at photographs of
appellant’s tattoos and identified several of them as Texas Syndicate tattoos. At the
conclusion of the voir dire examination, the trial court found that “the underlying
facts and data do provide a sufficient basis for the expert’s opinions[,] . . . and I do
not find it to be unfairly prejudicial when weighed against the probative value that it
should be excluded.” 
          Before the jury, Officer Taylor testified that, “because of the classification of
that gang in the prison system as a security threat group, the members are segregated
from the general population.” He explained the nature of the Texas Syndicate by
stating that it was a “criminal enterprise” used for “drug trafficking, robberies,
murders. They are into all kinds of criminal activity.” Taylor conceded that,
although he believed appellant was a member of the Texas Syndicate, he did not
know the extent of appellant’s involvement with the gang.
          We find Officer Taylor’s testimony sufficient to satisfy both of the first two
prongs of Beasley. 902 S.W.2d at 457. First, Officer Taylor’s expert opinion
testimony that certain of appellant’s tattoos had distinctive meanings and were
common in the Texas Syndicate gang supplied sound evidence of appellant’s gang
membership. Id. at 454 (membership was established by defendant’s wearing of gang
colors and his association with gang members, not by witness testifying that he or she
knew that defendant was in gang); Anderson v. State, 901 S.W.2d 946, 948 (Tex.
Crim. App. 1995) (police officer testified that he knew defendant was gang member
because he was in company of gang members and wore gang T-shirt); Stevenson v.
State, 963 S.W.2d 801, 803–04 (Tex. App.—Fort Worth 1998, pet. ref’d) (police
officer testified that defendant’s tattoo had significance related to gang activity and
that defendant used phrase “what’s up, cuz?” which has distinctive meaning in same
gang). Second, Officer Taylor’s testimony as to the nature and activities of Texas
Syndicate was sufficient to provide evidence of the character and reputation of the
gang. See, e.g., Aguilar v. State, 29 S.W.3d 268, 270 (Tex. App.—Houston [14th
Dist.] 2000, no pet.) (description of a gang as a “criminal street gang” held sufficient
to establish the gang’s bad reputation and meet the “evidentiary predicate of proving
the gang’s illegal activities” under Beasley).
          In contrast, we do not believe that the third and fourth Beasley prongs were
satisfied in this case. Appellant argues that Beasley requires that the trial court
instruct the jury that (1) it was not required to determine whether the appellant
committed the bad acts engaged in by his gang and (2) it could only consider
evidence of appellant’s gang membership when evaluating his character and
reputation. The record reveals that the trial court did not give either instruction in this
case. 
          As we noted above, however, Beasley is not the only gate through which such
evidence may be introduced. Beasley is a 1995 opinion from the Court of Criminal
Appeals, and the Court of Criminal Appeals’ analysis relied upon the pre-1993
version of the Texas Code of Criminal Procedure, under which evidence of
unadjudicated extraneous bad acts could not be admitted at the punishment phase. 
See Beasley, 902 S.W.2d at 457 (McCormick, J., concurring). Texas law now allows
the admission of unadjudicated extraneous bad acts at the punishment phase. See,
e.g., State v. Vasilas, 187 S.W.3d 486, 489 n.5 (Tex. Crim. App. 2006) (noting that
Beasley relied upon a prior version of the Texas Code of Criminal Procedure, and that
the Texas Legislature specifically amended the Code to make evidence of
“unadjudicated extraneous offenses and prior bad acts” admissible at the punishment
phase); Brooks v. State, 961 S.W.2d 396, 400 (Tex. App.—Houston [1st Dist.] 1997,
no pet.) (taking “judicial notice of the struggle between the legislature and the Court
of Criminal Appeals over enlarging the scope of evidence admissible at the
punishment stage of non-capital trials.”). 
          Rather than Beasley, it is Section 3(a) of Article 37.07 in the Texas Code of
Criminal Procedure that now governs the admissibility of evidence during the
punishment stage of a non-capital criminal trial. Erazo v. State, 144 S.W.3d 487, 491
(Tex. Crim. App. 2004). The current version of Article 37.07, section 3(a)(1) states
that in the punishment phase
evidence may be offered by the [S]tate and the defendant as to any
matter the court deems relevant to sentencing, including but not limited
to the prior criminal record of the defendant, his general reputation, his
character, an opinion regarding his character, the circumstances of the
offense for which he is being tried, and . . . any other evidence of an
extraneous crime or bad act. . . . 

Tex. Code Crim. Proc. Ann. art. 37.07, § 3(a)(1) (Vernon 2006) (emphasis added). 
Thus, a wide scope of evidence of any “bad acts” is allowed at the punishment phase
in a case such as appellant’s. Id. As we have previously noted, with regard to
evidence to be introduced during the punishment phase, “[r]elevance in this context
is more a matter of policy than an application of Rule of Evidence 401; it
fundamentally consists of what would be helpful to the jury in determining the
appropriate punishment.” Garcia v. State, 239 S.W.3d 862, 865 (Tex.
App.—Houston [1st Dist.] 2007, pet. ref’d) (citing Mendiola v. State, 21 S.W.3d 282,
285 (Tex. Crim. App. 2000) and Tex. R. Evid. 401 (defining relevant evidence as
evidence having any tendency to make existence of fact that is of consequence to
determination of action more probable or less probable than it would be without
evidence)). See also Payne v. Tennessee, 501 U.S. 808, 820–821, 111 S. Ct. 2597,
2605–06 (1991) (observing that “the sentencing authority has always been free to
consider a wide range of relevant material”); United States v. Tucker, 404 U.S. 443,
446, 92 S. Ct. 589, 591 (1972) (noting that, in sentencing proceeding, “a judge may
appropriately conduct an inquiry broad in scope, largely unlimited either as to the
kind of information he may consider, or the source from which it may come”).
          Evidence of membership in a gang such as Texas Syndicate would come under
the type of “bad acts” relevant to sentencing, and Article 37.07 explicitly allows the
introduction of such evidence, even without satisfying the requirements set forth in
Beasley. See, e.g., Garcia v. State, 239 S.W.3d at 865. 
          The trial court is the authority on the threshold issue of the admissibility of
relevant evidence during the punishment phase, while the jury determines whether or
not the burden of proof for those offenses presented has been satisfied by the party
offering the evidence. See Mitchell v. State, 931 S.W.2d 950, 954 (Tex. Crim. App.
1996). Here, after admitting the evidence of appellant’s gang membership, the trial
court properly instructed the jury it could not consider any evidence of an alleged
extraneous crime or bad act (i.e., gang membership or crimes committed by that gang)
unless the State had proved “beyond a reasonable doubt” that the appellant had
committed the act, or it was one for which appellant could be held criminally
responsible. Huizar v. State, 12 S.W.3d 479, 480–81 (Tex. Crim. App. 2000)
(holding that, if extraneous evidence is offered during the punishment phase, the trial
court must sua sponte provide a reasonable doubt instruction). 
          The instruction concluded, “. . . if you have a reasonable doubt that the
defendant committed an extraneous crime or bad act or could be held criminally
responsible for an extraneous crime or bad act, then you may not consider such
evidence in assessing punishment.”     By issuing this instruction, the trial court
limited the jury’s review of evidence in the punishment phase to those bad acts which
had been proven beyond a reasonable doubt. We note that such an instruction
actually did more to curtail the jury’s consideration of appellant’s gang membership
than an instruction under Beasley would have accomplished.We overrule appellant’s second point of error.Conclusion
          We affirm the trial court’s judgment.
                                         
 
 
                                                             George C. Hanks, Jr.
                                                             Justice

Panel consists of Justices Nuchia, Alcala, and Hanks.

Publish. Tex. R. App. P. 47.2(b).