**Hargis Ray MURRAY, Appellant,**

v.

**The STATE of Texas, State.**

**No. 2–92–074–CR.**

Court of Appeals of Texas,
Fort Worth.

July 7, 1993.

Rehearing Overruled Aug. 3, 1993.

David Bays, Fort Worth, for appellant.

Tim Curry, Crim. Dist. Atty., Betty Marshall and Chuck M. Mallin, Asst. Chiefs of the Appellate Section, Danielle A. Legault, Richard Alpert, Bill Durkin, Asst. Dist. Attys., Fort Worth, for appellee.

Before WEAVER, HICKS and FARRAR, JJ.

OPINION

FARRAR, Justice.

Appellant, Hargis Ray Murray, was convicted of robbery and sentenced by a jury to seventy years confinement. He appeals by three points of error. We only address his second point of error, that he was denied his Sixth Amendment right to effective assistance of counsel. We sustain this point of error so we do not address his additional points of error.

We reverse and remand to the trial court for a new trial.

At J.C. Penney's, security officers and an assistant manager observed Murray stuffing mens' suits inside a brown paper bag. When he left the store, they pursued him and, during the chase, he dropped the bag. Soon thereafter, one of the officers, Mike Sherman, caught up with Murray and tackled him.

At the trial, Sherman testified that Murray fought him, striking him with his hand and using his leg in an attempt to push Sherman away. Murray admitted stealing the suits but denied that he assaulted Sherman.

The trial court initially submitted a charge to the jury on the offense of robbery and felony theft. The robbery definition instructed the jury that:

A person commits robbery if in the course of committing theft and with intent to obtain or maintain control of the property, he intentionally or knowingly causes bodily injury to another.

Neither Murray or the State objected to the lack of an instruction on "in the course of committing theft." In closing argument, after pointing out that Murray admitted stealing the suits, Murray's counsel stated:

If you look at it that way and you believe everything he said, including the fact that he got hit by this man during the struggle, then you still have to reach a verdict of not guilty for the robbery charge, and let me show you why.

The Court tells you if you believe from the evidence beyond a reasonable doubt that the Defendant, Hargis Ray Murray, did then and there, knowingly and intentionally, number one, while in the course of committing a theft of property.

*Now, when this assault occurred, was it in the course of committing a theft of property?*

Answer, no. The property was already gone. He had dropped the property back during the chase. He was not trying to steal anything when he took—when he was caught by Mike Sherman. [Emphasis added.]

The prosecutor objected, arguing that "[c]ase law clearly says that in the course of committing theft includes an attempt to flee—." Murray's counsel replied: "Now, wait a minute, Your Honor. That's not in the Charge, and we are arguing the law in the Charge." The court overruled the State's objection because this instruction was not included in the charge. After this ruling, Murray's counsel continued his argument and concluded with a short defense that Murray did not assault the officer. Afterwards, the court did not permit the State to argue the instruction.

The jury began deliberation but decided to return and continue the next day. The next morning, the State moved for the court to add the instruction to the charge. Murray's counsel objected pursuant to TEX.

CODE CRIM.PROC.ANN. art. 36.16 (Vernon 1981), which mandates that a court cannot supplement the charge after argument begins, unless counsel made improper jury argument, the jury requests it, or the judge permits additional testimony. *Id.* Then he stated:

> We are at a point where the argument has already been begun and finished. The jury has deliberated for, on my estimates, an hour and a half, perhaps two hours. They have given no indication that they are deadlocked or they request or require any further instructions on the law.
>
> . . . .
>
> This Court drafted a Charge. This Court presented both sides with the Charge, gave both sides an opportunity to read and make objections to the Charge. I did notice that the Court had failed to instruct the jury on this matter, but I saw it in the best interests of Mr. Murray to not bring it to the Court's attention. I know I have a duty to the Court, but I think I have a stronger and deeper duty to the Defendant at that kind of a juncture in the case.
>
> But to characterize my argument as an improper argument I think is erroneous. I was arguing what was in the Charge. The gentlemen of the prosecution had an opportunity to make objections to the Charge.
>
> . . . .
>
> Now, the fact that the Charge included some advantageous position for my client—I was cashing in on that advantageous position—only highlights the—the fact that we—we occasionally need to recall that this is an advocacy system. State is well-represented. They have enormous resources they can bring to bear against Mr. Murray, and they have had their chance, and I merely took the position I think any advocate would have taken, and I think they have made their bed and now they have to lie in it, Your Honor.

The court decided to correct the charge, stating:

> Court is of the opinion that an erroneous Charge has been submitted to the jury in that this Charge should have properly included the definition of the phrase 'in the course of committing theft,' which was omitted.
>
> *The Court further recognizes that, in final argument, part of Defense counsel's argument was in direct contravention to this definition, which was not in the Charge, and that the Court overruled the State's objection to this line of argument.*
>
> *Further, that when the State made final argument and attempted to answer the argument of Defense counsel, the Court sustained the Defendant's objection on the basis that the argument was outside the law as given by the Charge.*
>
> Court is of the opinion that a manifest necessity exists in the interest of justice that the Court correct the erroneous Charge previously given. . . . [Emphasis added.]

It submitted this supplemental instruction:

> 'In the course of committing theft' means conduct that occurs in an attempt to commit, during the commission, or in immediate flight after the attempt or commission of theft.

No further arguments were requested or allowed and the jury found Murray guilty of robbery.

On appeal, Murray argues that changing the charge after jury argument was tantamount to denying him jury argument; thereby violating his Sixth Amendment [1] right to effective assistance of counsel for his defense. He contends that because his defense strategy was clear, the supplemental instruction had the legal effect of undercutting his counsel's strategy and jury argument, and it allowed the jury to convict him on a theory not available for comment during jury argument. We sustain this point of error because the trial court's late supplementation constructively prevented assistance of counsel in a critical

---

1. U.S. CONST. amend. VI.

stage of the trial and denied Murray a fair trial.

Before we analyze Murray's contention, we address the State's arguments. First, it asserts that the trial court correctly supplemented the charge under article 36.16, relying upon *Bustillos v. State*, 464 S.W.2d 118, 125 (Tex.Crim.App.1971) and *Nowlin v. State*, 76 Tex.Crim. 480, 175 S.W. 1070 (1915). These cases are not controlling because Murray has not lodged a complaint on appeal that article 36.16 was violated.

■ Next, the State points out that Murray did not object on the ground that it denied his right to counsel. It argues that Murray waived any alleged error because even constitutional error can be waived, citing *Corley v. State*, 582 S.W.2d 815, 821 (Tex.Crim.App.), *cert. denied*, 444 U.S. 919, 100 S.Ct. 238, 62 L.Ed.2d 176 (1979). Yet, Murray's defense was clear, the court was aware of this defensive argument and specifically allowed it, the court was aware that the supplementation was late, the court was aware that the supplemental instruction directly contravened Murray's defense, and Murray objected to the late supplementation. We overrule the State's argument because an insistence upon a more specific objection would be a pointless formality in this case. *See United States v. Davis*, 583 F.2d 190, 194 (5th Cir.1978).

■ The State also claims that Murray waived alleged error on appeal because he did not request additional time to argue. The First Court of Appeals has held that the lack of a request for additional argument does not constitute waiver under these circumstances because "[t]he same jury that may have found counsel's first argument persuasive would have doubtless found counsel's second argument absurd." *Moore v. State*, 848 S.W.2d 920, 923 (Tex. App.—Houston [1st Dist.] 1993, pet. ref'd). In light of the trial court's actions, we cannot be assured that additional argument would have cured the denial of a fair trial or provided Murray effective assistance of counsel. For this reason, we hold that

Murray's lack of request for additional jury argument did not waive error on appeal.

■ Now we consider the nature of the right Murray contends was violated. The Sixth Amendment provides for the assistance of counsel in recognition of the need to enlighten an accused of the defenses available to him and in order to enable him to plead those defenses intelligently. *See Powell v. Alabama*, 287 U.S. 45, 63 n. 1, 69–70, 53 S.Ct. 55, 62 n. 1, 64, 77 L.Ed. 158, 167 n. 1, 170–71 (1932); *Hamilton v. Alabama*, 368 U.S. 52, 55, 82 S.Ct. 157, 159, 7 L.Ed.2d 114, 117 (1961). Accordingly, this right is "so fundamental and essential to a fair trial, and so, to due process of law," that it applies to the state through the Fourteenth Amendment.[2] *Gideon v. Wainwright*, 372 U.S. 335, 340, 83 S.Ct. 792, 794, 9 L.Ed.2d 799, 802 (1963). In fact, the right to the effective assistance of counsel is recognized "not for its own sake, but because of the effect it has on the ability of the accused to receive a fair trial. Absent some effect of challenged conduct on the reliability of the trial process, the Sixth Amendment guarantee is generally not implicated." *United States v. Cronic*, 466 U.S. 648, 658, 104 S.Ct. 2039, 2046, 80 L.Ed.2d 657, 667 (1984); *accord Powell*, 287 U.S. at 52, 53 S.Ct. at 58, 77 L.Ed. at 162.

Constitutional error of first magnitude may be present "on some occasions when although counsel is available to assist the accused during trial, the likelihood that any lawyer, even a fully competent one, could provide effective assistance is so small that a presumption of prejudice is appropriate without inquiry into the actual conduct of the trial." *Cronic*, 466 U.S. at 659–60, 104 S.Ct. at 2047, 80 L.Ed.2d at 668. "[T]he Constitution cannot tolerate trials in which counsel, though present in name, is unable to assist the defendant to obtain a fair decision on the merits." *Evitts v. Lucey*, 469 U.S. 387, 395, 105 S.Ct. 830, 836, 83 L.Ed.2d 821, 829 (1985). Because of this "[t]he Court has uniformly found constitutional error without any showing of prejudice when counsel was either totally ab-

2. U.S. Const. amend. XIV.

sent, or prevented from assisting the accused during a critical stage of the proceeding." *Cronic,* 466 U.S. at 660 n. 25, 104 S.Ct. at 2047 n. 25, 80 L.Ed.2d at 668 n. 25 (1984); *accord Perry v. Leeke,* 488 U.S. 272, 280, 109 S.Ct. 594, 600, 102 L.Ed.2d 624, 633 (1989) (actual or constructive denial of the assistance of counsel altogether is not subject to prejudice analysis).

■ One such critical stage is closing argument. *Herring v. New York,* 422 U.S. 853, 858–59, 95 S.Ct. 2550, 2553–554, 45 L.Ed.2d 593, 598 (1975). For example:

There can be no doubt that closing argument for the defense is a basic element of the adversary factfinding process in a criminal trial. Accordingly, it has universally been held that counsel for the defense has a right to make a closing summation to the jury, no matter how strong the case for the prosecution may appear to the presiding judge.

. . . .

It can hardly be questioned that closing argument serves to sharpen and clarify the issues for resolution by the trier of fact in a criminal case. For it is only after all the evidence is in that counsel for the parties are in a position to present their respective versions of the case as a whole. Only then can they argue the inferences to be drawn from all the testimony, and point out the weaknesses of their adversaries' positions. *And for the defense, closing argument is the last clear chance to persuade the trier of fact that there may be reasonable doubt of the defendant's guilt.*

*Id.* 422 U.S. at 858, 862, 95 S.Ct. at 2553, 2555, 45 L.Ed.2d at 598, 600 (emphasis added).

Another reason closing argument is critical is because of its role in our adversary system.

The very premise of our adversary system of criminal justice is that partisan advocacy on both sides of a case will best promote the ultimate objective that the guilty be convicted and the innocent go free. In a criminal trial, which is in the end basically a factfinding process, no aspect of such advocacy could be more

important than the opportunity finally to marshal the evidence for each side before submission of the case to judgment.

*Herring,* 422 U.S. at 862, 95 S.Ct. at 2555, 45 L.Ed.2d at 600.

■ Yet, the opportunity provided by closing argument is not meaningful if counsel is misled as to what constitutes the determinative issues. "Common justice requires that no man shall be condemned in his person or property without notice and an opportunity to make his defense." *Baldwin v. Hale,* 68 U.S. 223, 233, 17 L.Ed. 531, 534 (1863). *"Notice of issues to be resolved by the adversary process is a fundamental characteristic of fair procedure."* *Lankford v. Idaho,* —— U.S. ——, ——, 111 S.Ct. 1723, 1732, 114 L.Ed.2d 173, 188 (1991) (emphasis added). This is the reason that "[i]f notice is not given, and the adversary process is not permitted to function properly, there is an increased chance of error, and with that, the possibility of an incorrect result." *Id.* —— U.S. at ——, 111 S.Ct. at 1733, 114 L.Ed.2d at 188.

The importance of the role played by notice and the adversary process during closing argument is reflected by FED. R.CRIM.P. 30, similar to TEX.CODE CRIM. PROC.ANN. art. 36.16, which requires "that counsel be informed of the court's proposed action on requested charges before arguments to the jury." *Davis,* 583 F.2d at 195 n. 4. While this rule is not invoked in our case, its purpose and the effects of its violations are helpful to our decision.

■ The purpose of rule 30 is "that counsel, fairly advised, may intelligibly argue." *Davis,* 583 F.2d at 195 n. 4. "[T]he effectiveness of counsel's argument and hence of appellant's defense" is impaired when the actual instructions submitted are substantially different from those the court led counsel to believe it would submit and when the instructions repudiate arguments which were made based upon counsel's inaccurate information. *United States v. Harvill,* 501 F.2d 295, 297 (9th Cir.1974); *compare United States v. Gaskins,* 849 F.2d 454, 460 (9th Cir.1988) (charge repudiated counsel's argument and required re-

versal) *with United States v. Lyles,* 593 F.2d 182, 189 (2d Cir.), *cert. denied,* 440 U.S. 972, 99 S.Ct. 1537, 59 L.Ed.2d 789 (1979) (charge did not directly repudiate counsel's argument so no fundamental prejudice to defense) *[and] United States v. Pena,* 897 F.2d 1075, 1084 (11th Cir.1990) (diminished effectiveness purely counsel's fault when the supplemental instruction did not substantially change the charge, it only slightly repudiated counsel's argument, it was not one previously requested by counsel, the court warned counsel that his position was questionable, and the instruction was necessary because of counsel's continued wrong argument). Reversal is justified because the potential prejudice from a court's repudiation of a counsel's argument is so great that the reviewing court cannot be assured of the same outcome had the counsel argued with accurate information. *Harvill,* 501 F.2d at 297. This is true even if the instructions given by the court are proper and only a portion of the closing argument is repudiated. *Id.*

█ With this in mind, we consider the need to balance the Sixth Amendment right to counsel with the trial court's administrative role. Despite the need for counsel, notice, and an adversary system, trial courts have great discretion in controlling and restraining argument. *Herring,* 422 U.S. at 862, 95 S.Ct. at 2555, 45 L.Ed.2d at 600. The Texas Court of Criminal Appeals has held that "improper denial of a jury argument may constitute a denial of the right to counsel but this holding assumes, *inter alia,* that the jury argument is one the defendant is entitled to make." *McGee v. State,* 774 S.W.2d 229, 238 (Tex.Crim. App.1989) (citations omitted), *cert. denied,* 494 U.S. 1060, 110 S.Ct. 1535, 108 L.Ed.2d 774 (1990). For this reason, a trial court's exclusion of argument which incorrectly states the law is not error. *Id.* In the same manner, FED.R.CRIM.P. 30 does not "operate to empower counsel, through the mechanics of the closing argument, either to dictate the law by which a verdict is reached or to create a mistrial by erroneously stating the legal principles applicable to a given situation." *Pena,* 897 F.2d at 1085.

In our case, no one contends that the argument in question was legally correct, so if the trial court had simply denied argument of this defense we would overrule Murray's point of error. But, unlike *McGee,* the trial court allowed the incorrect argument, denied the State the ability to correctly argue the law, and allowed the jury to begin deliberating. Only after the jury reconvened for deliberation the next day did the trial court supplement the charge.

We hold that although Murray's counsel was present in name, he was prevented from effectively assisting the accused during closing argument. Because the trial court ruled that he could make the argument then repudiated that very argument, Murray and his counsel were misled by the court as to the determinative issues until it was too late to salvage closing argument. Without notice that the court would submit this instruction, Murray's counsel could not fulfill his function of intelligently arguing the defenses actually available to Murray. Further, the court's repudiation of the very argument it allowed caused the trial to lose its character as an adversary proceeding, greatly jeopardizing Murray's ability to receive a fair trial. Murray would have been better off without closing argument.

In a case similar to this, the First Court of Appeals also recognized that this type of action is tantamount to denying counsel the opportunity to make closing argument and denies the defendant a fair trial. *Moore,* 848 S.W.2d at 923. The court reasoned:

> The amendment effectively instructed the jury to disregard counsel's argument.... It was like denying counsel the right to make a closing argument. That denial would certainly be reversible error. What happened here was worse. Instead of hearing no argument from defense counsel, jurors heard an argument, and then the judge told them the argument was wrong. *When the judge gave the ... instruction, it must have seemed to the jury as if he was answering defense counsel's oral argument with a written rebuttal. From then on,*

*it was as if counsel's opponent was not the prosecutor, but the judge. That denied appellant a fair trial.*

*Id.* (emphasis added) (citations omitted).

The reliability of the trial process was jeopardized through the trial court's repudiation of the very argument it allowed, so we agree with Murray that the court's late supplementation had an effect tantamount to denying jury argument; thereby violating his Sixth Amendment right to effective assistance of counsel. Because the trial court constructively prevented assistance of counsel, we presume prejudice, hold that the error was harmful, and sustain Murray's second point of error. "The Sixth Amendment stands as a constant admonition that if the constitutional safeguards it provides be lost, justice will not 'still be done.'" *Johnson v. Zerbst,* 304 U.S. 458, 462, 58 S.Ct. 1019, 1022, 82 L.Ed. 1461, 1465 (1938).

The judgment is reversed and the cause is remanded for a new trial.