**Affirmed and Memorandum Opinion filed February 21, 2013.**



In The

# Fourteenth Court of Appeals

---

### NO. 14-11-01102-CR

---

### JAIME RICARDO PEREZ, Appellant

### V.

### THE STATE OF TEXAS, Appellee

---

**On Appeal from the County Criminal Court at Law No. 4**
**Harris County, Texas**
**Trial Court Cause No. 1746613**

---

## M E M O R A N D U M   O P I N I O N

Appellant presents four issues in this case, each relating to the trial court's admission of medical records. We must decide whether the trial court erred by admitting those records after the conclusion of closing argument, whether the admission violated appellant's right to confrontation, and whether the trial court violated appellant's right to counsel by denying his request for additional closing argument. We conclude that the trial court erred by admitting the records at such a

late stage in the proceedings. However, because the contents of the records were proved by other properly admitted evidence, we conclude that the error was harmless. We affirm the judgment of the trial court.

## BACKGROUND

Appellant was charged with assaulting his wife, the complainant. The incident allegedly occurred on March 23, 2011, after appellant woke up to find that the complainant was not by his side in bed. She had slept overnight, as she had recently been doing, in the guest bedroom adjacent to her son's bedroom. The complainant preferred to sleep with her two-year-old son nearby, in case he had an asthma attack during the night. This sleeping arrangement was the source of some disagreement in the family, appellant believing that his son should be weaned from his mother's excessive attention.

When her son woke up earlier than usual on the day of the incident, the complainant went to his room, lay down in front of his crib, and tried to comfort him back to sleep. Appellant entered the bedroom later that morning and angrily told the complainant that she must stop sleeping with their child. As the complainant attempted to leave, appellant grabbed her body and slammed her forehead into the door frame. He yelled at her again, ordering her to get ready for the day. The complainant went to her bathroom, where she crouched down as if to protect herself. Using both hands, appellant pulled her up by the hair, then slapped her in the face with an open palm. As the complainant stepped into the shower, appellant hit her once more in the back of the head. He then left for work.

That morning, the complainant contacted a divorce attorney, who advised that she see a doctor. The complainant visited her family physician that same afternoon. The day after her examination, the complainant went to the police station and gave a statement to the authorities. During the police interview, a

2

deputy constable took photographs of the complainant's face. The pictures show bruising around her eye, but no other marks or abrasions.

In a hearing conducted the morning of trial, appellant objected to the prospective admission of State's Exhibit 1, a 90-page collection of the complainant's medical records. The records spanned several years of treatment, dating as far back as 2007. In pertinent part, the records documented that on the day of the incident, the complainant had presented with an "injury to head" because of an "assault by husband." The records specified that the injury was inflicted on the right side of the complainant's head, that she was bruised, and that there was mild tenderness around the orbital bone. The records also showed that after examining these injuries, the complainant's doctor recommended that she have x-rays and a CT scan performed, which she did. Appellant objected that many pages from the exhibit were irrelevant because they predated the charged offense. He also objected that no one was available to interpret the records, in light of the State's indication that it would not call the complainant's family physician.

The prosecutor responded that she had subpoenaed all of the complainant's medical records because she anticipated a defensive claim that the complainant suffered from depression. The prosecutor explained that should the defense make such a claim, all of the records would be relevant because they showed that the complainant never complained of depression or of any similar disorder. The prosecutor stated that if the defense did not challenge the complainant's psychological history, she would agree to limit the admission of evidence to only those records generated since the day of the incident. As the prosecutor explained, these selected records would be offered simply "to back up the assertion that [the complainant] went to [the doctor's office], got treated, made an outcry, there was a diagnosis made as a result of that, and she was seen in the days after that as well."

Appellant objected that even if the exhibit were admitted for a limited purpose, the records still contained prejudicial language.

The parties eventually arrived at a mutual agreement for admitting the records as evidence. The agreement called for a multi-step procedure, beginning with the admission of the entire exhibit for record purposes only—i.e., for inclusion in the record, but not for publication to the jury. Following that limited admission, the parties agreed to meet and mutually decide which portions of the records to furnish to the jury. To assuage appellant's concerns, the prosecutor also agreed to redact any prejudicial language from the portions ultimately selected. The trial court approved this arrangement, and stated further that "nothing is going in front of the jury unless we come to an agreement or I make a ruling on it." The court proposed that the trial proceed as planned, that testimony be heard until the end of the day, and that both sides come to a consensus on the records before the jury returned the following morning. Both sides assented to that procedure.

For its first witness, the State called the custodian of records from the complainant's doctor's office. In the presence of the jury, the custodian laid the foundation for the complainant's medical records to be admitted as business records. The prosecutor then offered the records to opposing counsel, which prompted the following comments and ruling:

> STATE: Your Honor, may I tender to opposing counsel?
> COURT: You may.
> DEFENSE: Your Honor, the Defense has no objection for record purposes.
> COURT: Then State's Exhibit No. 1, at this time, will be admitted as record purposes only.

The State passed the custodian of records without discussing the contents of the exhibit. Appellant did not cross-examine the witness.

The State later called the deputy constable who had interviewed the complainant. The deputy testified about his encounter with the complainant the day after the incident as well as the photographs that were taken of her. The complainant testified next, and she discussed the details of the assault at greater length. The State rested without publishing the medical records to the jury, and the complainant's family physician was never called to testify. Consequently, the State never proved the relevancy of the records, either in whole or in part.

The defense proceeded with appellant's testifying on his own behalf. Appellant denied that he had ever assaulted his wife. He argued that the complainant had fabricated her story, speculating that she had brought these allegations to build a case for divorce. Under this theory, appellant claimed that the complainant was going to seek sole custody of their son, then relocate to Germany, her country of origin. The defense neither suggested that the complainant had suffered from depression, nor moved to strike or otherwise complain about the medical records for any reason.

Both sides rested at the end of the first day of trial. Before the jury was released, the trial court allowed each side to deliver its closing argument. The prosecutor briefly mentioned the medical records in her first closing argument. Without discussing the contents of the records, the prosecutor remarked that the complainant had visited her physician on the day of the incident, and that the records were one of the first things discussed at trial. Appellant did not object to the prosecutor's statements, and in his argument that followed, he did not refer to the complainant's medical records or the effect of their limited admission.

After closing arguments had concluded, the court released the jury with instructions to begin deliberations the following morning. Once the jury was excused, the trial court recalled that the parties had not yet met to discuss which

portions of the exhibit to admit as evidence. The record reflects the following exchange:

> COURT: Okay, guys, good job. We'll be in recess until tomorrow morning.
>
> DEFENSE: What time do you want us back?
>
> COURT: 9:30.
>
> DEFENSE: 9:30?
>
> COURT: Unless – actually, guys – okay. I'll give you a choice. You can work on the medicals right now; you can work on them early in the morning. Okay? So you can come here early and do them, or you can wait and do them to see which one – what part you're going to let in. I need photos – copies of those photos here in the morning. So, I'll leave that up to you: Work late, come early. It's your choice.

The court immediately recessed for the evening.

After deliberations began the next day, the jury sent the trial court a note requesting to see the complainant's medical records and the photos taken of her shortly after the incident. In a hearing outside the presence of the jury, the trial court announced that the attorneys for both sides had reduced the medical records to eight pages for submission to the jury. Although the prejudicial portions from those records had been redacted, appellant still asserted various objections to their admission. Appellant first objected to the records as a whole, claiming that they had been offered without the foundation of an expert, in violation of his right to confrontation. Appellant also objected that all evidence in the case had been closed and that it was too late to publish new evidence to the jury. The trial court overruled the objections, noting that "the medical records . . . were already in," and that the parties had previously reached an agreement regarding their admission as evidence.

Appellant then objected that he had not been given an opportunity to argue to the jury about the medical records because they had been admitted for record purposes only. The court overruled this objection as well, stating "you knew the records were there, we already had notice that they were going to be back up, and you had the opportunity to argue if you so chose." The trial court also denied appellant's request for additional closing argument to address the medical records.

After receiving the redacted medical records, the jury found appellant guilty of the charged offense. Punishment was assessed at 180 days' confinement, which the trial court probated for one year of community supervision. Appellant now appeals.

## UNTIMELY ADMISSION

We begin with appellant's third issue, which focuses on the timing of the records' admission. Appellant argues that the trial court erred by admitting the records during jury deliberations, citing the rule that no new evidence may be admitted after the parties have delivered their closing arguments. The State challenges the premise of this argument. It contends that the records were not "new," that they had already been admitted as evidence during its own case-in-chief, and that the trial court did not err by sending that evidence to the jury upon its request.

We disagree with the State's characterization. When State's Exhibit 1 was offered during trial, the court clearly ruled that the exhibit was admitted "as record purposes only." The exhibit was not published to the jury at that time, the court did not indicate that the exhibit was admitted for all purposes, and it did not say that the exhibit was admitted subject to a condition. By limiting the scope of the admission to record purposes only, the court effectively ruled that no part of the exhibit would be considered as evidence until further ruling. *See Alridge v. State*,

7

732 S.W.2d 395, 398 (Tex. App.—Dallas 1987, pet. ref'd) (holding that jury could not consider exhibits admitted for record purposes when determining the truth of an enhancement paragraph).

The record shows that the trial court fully understood the impact of this ruling. During the pretrial hearing, the exhibit's limited admission had been discussed approvingly by the trial court. The court agreed to let the parties defer until a later time a decision as to which portions of the exhibit should be offered as relevant and admissible. During trial, the court admitted the exhibit for record purposes "at this time," a comment suggesting that the limited admission was only temporary. The court also indicated that it anticipated a second ruling when it instructed the parties to "work on the medicals," an instruction delayed until after closing arguments had concluded. Based on this record, we agree with appellant that no part of the exhibit had been admitted as evidence by the end of closing argument.

We review a trial court's decision to admit or exclude evidence for an abuse of discretion. *Moses v. State*, 105 S.W.3d 622, 627 (Tex. Crim. App. 2003). The trial court abuses its discretion when its decision is arbitrary, unreasonable, or without reference to guiding rules or principles. *Makeig v. State*, 802 S.W.2d 59, 62 (Tex. Crim. App. 1990).

Appellant contends that the trial court abused its discretion by admitting the records because the admission came during jury deliberations. For authority, appellant cites article 36.02 of the Texas Code of Criminal Procedure, which provides as follows: "The court shall allow testimony to be introduced at any time before the argument of a cause is concluded, if it appears that it is necessary to a due administration of justice." Tex. Code Crim. Proc. art. 36.02. Although this provision has existed in various forms since 1856, its language has remained

unchanged. *See Peek v. State*, 106 S.W.3d 72, 75 n.8 (Tex. Crim. App. 2003) (providing citations to earlier forms). For more than a hundred years, Texas courts have construed it as a blanket prohibition on the introduction of evidence after both sides have concluded their closing arguments. *See Pena v. State*, 353 S.W.3d 797, 808 (Tex. Crim. App. 2011) ("The introduction of evidence after the conclusion of closing arguments is prohibited."); *Beeler v. State*, 374 S.W.2d 237, 239 (Tex. Crim. App. 1964); *Reed v. State*, 76 Tex. Crim. 335, 338, 174 S.W. 1065, 1066 (1915); *Galan v. State*, 76 Tex. Crim. 619, 629, 177 S.W. 124, 129 (1915), *overruled on other grounds by Wolfe v. State*, 147 Tex. Crim. 62, 178 S.W.2d 274 (1944); *Lockett v. State*, 55 S.W. 336, 336 (Tex. Crim. App. 1900); *Lorance v. State*, 37 Tex. Crim. 453, 453, 36 S.W. 93, 93 (1896); *Williams v. State*, 35 Tex. Crim. 183, 189, 32 S.W. 893, 894 (1895); *Ming v. State*, 24 S.W. 29, 29 (Tex. Crim. App. 1893); *Allman v. State*, 164 S.W.3d 717, 719 (Tex. App.—Austin 2005, no pet.). The statute is "mandatory," and permits no exceptions. *See Lockett*, 55 S.W. at 336; *Allman*, 164 S.W.3d at 719. It provides a bright line rule, bringing predictability to the criminal trial pattern, and ensuring that the jury may not be unduly influenced by the introduction of newly discovered evidence. *See Williams*, 35 Tex. Crim. at 189, 32 S.W. at 894 ("There must be an end to the introduction of evidence somewhere . . . .").

The State suggests that appellant cannot complain about the records' untimely admission because appellant agreed to meet with the prosecutor and mutually decide which portions of the exhibit were relevant and admissible. According to the State, appellant's assent to this procedure demonstrated a tacit acknowledgment that the jury was entitled to review this evidence. The parties' agreement is not determinative, however. Even with the court's approval, the parties cannot agree to disregard a mandatory statute. The meeting and resolution

of evidentiary disputes should have taken place before closing argument. After closing argument, the court had no discretion to admit any further evidence. The untimely admission was therefore erroneous. *See* Tex. Code Crim. Proc. art. 36.02; *Pena*, 353 S.W.3d at 808; *Allman*, 164 S.W.3d at 721.

A violation of Article 36.02 is subject to a harm analysis for nonconstitutional error. *See Allman*, 164 S.W.3d at 721. Under this standard, error must be disregarded unless it affects a defendant's substantial rights. Tex. R. App. P. 44.2(b). An error affects a defendant's substantial rights when the error has a substantial and injurious effect or influence on the jury's verdict. *King v. State*, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997). If the error had no or only a slight influence on the verdict, the error is harmless. *Id.*

The eight pages of medical records submitted to the jury do not contain any facts not already established by other properly admitted evidence. In material part, the records reflect that the complainant presented with an assault by her husband and that there was bruising to her right eye. The records do not detail any particulars of the alleged assault, other than to say that the complainant's head was hit against a door frame. These same facts were established by the complainant's own testimony and the testimony of the deputy constable who took her statement and observed her injuries. These facts were also evidenced by the pictures of the complainant taken by the deputy a day after the incident. Because the contents of the records were proved by other properly admitted evidence, we conclude that the records' admission, though improper, was harmless. *See Brooks v. State*, 990 S.W.2d 278, 287 (Tex. Crim. App. 1999) ("Moreover, any error in admitting the evidence was harmless in light of other properly admitted evidence proving the same fact."); *Trevino v. State*, 218 S.W.3d 234, 240 (Tex. App.—Houston [14th Dist.] 2007, no pet.). Appellant's third issue is overruled.

## CONFRONTATION CLAUSE

In his fourth issue, appellant argues that the trial court violated his Sixth Amendment right to confrontation by admitting the complainant's medical records without the testimony of her family physician. Appellant contends that the records were prepared in anticipation of litigation, and therefore, that he was entitled to cross-examine the doctor who created them. To reach appellant's constitutional argument, we must first determine whether the medical records are "testimonial" and subject to the Confrontation Clause. *See Davis v. Washington*, 547 U.S. 813, 821 (2006) (holding that only testimonial statements are subject to the Confrontation Clause); *Crawford v. Washington*, 541 U.S. 36, 68 (2004) (holding that the testimonial statements of a witness who did not appear at trial are inadmissible unless the witness was unavailable to testify and the defendant had a prior opportunity for cross-examination). Our review is bifurcated. We consider de novo all questions of law. *Wall v. State*, 184 S.W.3d 730, 742 (Tex. Crim. App. 2006). If resolution on the ultimate question turns upon an issue of fact, we review for an abuse of discretion. *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997).

The Supreme Court has not crafted an exclusive definition for classifying which types of statements are testimonial in nature. *See Davis*, 547 U.S. at 822 (providing one standard "[w]ithout attempting to produce an exhaustive classification of all conceivable statements"). However, in *Crawford*, the Court held that the Confrontation Clause applies only to witnesses who "bear testimony," and testimony, in turn, is typically a "solemn declaration or affirmation made for the purpose of establishing or proving some fact." *Crawford*, 541 U.S. at 51.

In the interrogation context, the Court has specifically noted that statements are nontestimonial "when made in the course of police interrogation under

11

circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency." *Davis*, 547 U.S. at 822; *see id.* at 822 n.1 (cautioning that a court should not imply that statements made in the absence of interrogation are necessarily nontestimonial). Statements are testimonial, on the other hand, "when the circumstances objectively indicate that there is no such ongoing emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution." *Id.*

Even though the complainant's physician was not engaged in a police interrogation at the time of her examination, the foregoing standards are still instructive. *See De La Paz v. State*, 273 S.W.3d 671, 680 (Tex. Crim. App. 2008) (applying same standards from *Davis* when determining whether medical records created by non-governmental employees were testimonial in nature). We therefore consider the primary purpose of the physician's encounter, objectively evaluating its circumstances and the statements and actions of the parties involved. *See Michigan v. Bryant*, 131 S. Ct. 1143, 1156 (2011).

The complainant provided the only testimony regarding the circumstances surrounding her medical examination. She testified that, following the alleged incident, she first spoke with a divorce attorney, and "because of [her] injuries," the attorney "advised [her] to see a doctor." There was no testimony about the physician's reasons for creating the medical records. An inference could be made that the records were created primarily for the purpose of establishing or proving events related to the assault. In the nonredacted version of the records, the physician noted that the complainant "contacted [a] lawyer" and "will make a police report." These notations could support a finding that the records were made in anticipation of litigation, and therefore, are testimonial.

But a plausible inference could also be made that the records were created simply for the purpose of medical diagnosis. As the complainant testified, the divorce attorney instructed her to see a physician "because of [her] injuries," and the records show that the doctor recommended further tests based upon her examination of the complainant. Under this theory, the trial court could have found that the records were nontestimonial because they were made in the physician's ordinary course of business, and for the objective purpose of evaluating the complainant's condition and defining the scope of her care. *See* Tex. R. Evid. 803(6) (creating hearsay exception for such records); *Melendez-Diaz v. Massachusetts*, 557 U.S. 305, 324 (2009) (explaining that business records are not testimonial because they are generally created for the administration of an entity's affairs and not for the purpose of establishing or proving some fact at trial); *id.* at 312 n.2 (noting that "medical reports created for treatment purposes . . . would not be testimonial under our decision today"); *see also Berkley v. State*, 298 S.W.3d 712, 715 (Tex. App.—San Antonio 2009, pet. ref'd) (holding medical records nontestimonial); *Smith v. State*, No. 05-09-01408-CR, 2011 WL 3278528, at *2 (Tex. App.—Dallas Aug. 2, 2011, pet. ref'd) (not designated for publication) (same).

An appellate court reviewing the trial court's decision on the admissibility of evidence may reverse it only for an abuse of discretion—i.e., only when the trial court's decision lies outside the zone of reasonable disagreement. *Shuffield v. State*, 189 S.W.3d 782, 793 (Tex. Crim. App. 2006). The trial court here was not presented with any direct evidence explaining the reasons for the physician's creation of medical records. Inferences could be made both ways as to whether the records were produced in anticipation of litigation. In such a situation, the trial court could reasonably find that the records were nontestimonial and created

13

primarily for the purpose of medical diagnosis. *Cf. Goodman v. State*, 302 S.W.3d 462, 470 (Tex. App.—Texarkana 2009, pet. ref'd) (concluding that trial court did not abuse its discretion in deciding that blood results were nontestimonial where "[t]here was evidence cutting both ways" regarding the reason for the blood draw). We find no abuse of discretion. Appellant's fourth issue is overruled.

## CLOSING ARGUMENT

In his first and second issues, appellant contends that the trial court violated his right to effective assistance of counsel by denying him the right to argue his version of the case as a whole. Claims regarding deprivations of constitutional rights present questions of law, which we review de novo. *See Lilly v. Virginia*, 527 U.S. 116, 137 (1999).

In every criminal prosecution, the accused enjoys a right to effective assistance of counsel guaranteed by both the federal and state constitutions. *See* U.S. Const. amend. VI; Tex. Const. art. 1, § 10. These constitutional guarantees have been interpreted to mean that the accused has a right to be heard in argument both as to the law and the facts of the case at the conclusion of testimony. *See Herring v. New York*, 422 U.S. 853, 863 (1975); *Ruedas v. State*, 586 S.W.2d 520, 522 (Tex. Crim. App. [Panel Op.] 1979); *Ferguson v. State*, 133 Tex. Crim. 250, 253–54, 110 S.W.2d 61, 63 (1937); *Anselin v. State*, 72 Tex. Crim. 17, 18, 160 S.W. 713, 714 (1913); *Spangler v. State*, 42 Tex. Crim. 233, 252–53, 61 S.W. 314, 322 (1900).

Appellant argues that his constitutional rights were violated because the trial court denied his request for additional closing argument to address the untimely admitted medical records. Appellant does not cite any direct authority for this argument. Cases examining the right to closing argument have found reversible error where a trial court completely denies an opportunity for closing summation.

*See Ruedas*, 586 S.W.2d at 524; *Anselin*, 72 Tex. Crim. at 18, 160 S.W. at 714. Reversible error has also been found where a court unreasonably limits the time available for closing argument, and where a court permits closing argument but restricts counsel from arguing a legitimate inference from the record. *See Dang v. State*, 154 S.W.3d 616, 622 (Tex. Crim. App. 2005); *Lemos v. State*, 130 S.W.3d 888, 892–93 (Tex. App.—El Paso 2004, no pet.). We are aware of no authority where error was predicated on the denial of additional closing argument after the trial court improperly admitted new evidence.

Appellant argues that we should find error, nonetheless, based on an analogy to *Murray v. State*, 857 S.W.2d 806 (Tex. App.—Fort Worth 1993, pet. ref'd). The issue in *Murray* focused not on the admission of additional evidence, but on changes made to the jury charge after closing argument had concluded. In that case, defense counsel discovered that an important instruction had been omitted from the jury charge. *Id.* at 807. When counsel delivered his closing argument, he claimed that because of the omission, his client could not be found guilty as charged. *Id*. After the jury commenced deliberations, the trial court decided to supplement the charge with the omitted instruction. *Id.* at 808. The defendant argued on appeal that the change was tantamount to the denial of argument. The court of appeals agreed, holding that the change had effectively "repudiated" counsel's closing argument and allowed the jury to convict the defendant on a theory not available for comment. *Id.* at 811–12.

*Murray* is distinguishable because the decision in that case was based on the trial court's "repudiation" of counsel's closing argument. The reviewing court found reversible error because the supplemental instruction was equivalent to the trial court's "answering defense counsel's oral argument with a written rebuttal." *Id.* at 811 (quoting *Moore v. State*, 848 S.W.2d 920, 923 (Tex. App.—Houston [1st

15

Dist.] 1993, pet. ref'd)). Appellant has not demonstrated how the trial court's admission of medical records, though improper, had the same effect of "repudiating" his counsel's closing argument.

Counsel made a compelling argument addressing all of the material evidence in the case. Counsel argued that appellant was the victim of a scheme for divorce. He referenced the complainant's encounter with her divorce attorney, her intent to be awarded sole custody of their son, and her desire to leave the country with her son. Counsel also noted that the photographic evidence of assault was problematic. He observed that there were no marks on the complainant's forehead, which cast doubt on her accusation that she had been pushed into a doorway. He also argued that the evidence of bruising around the eye was inconsistent with an accusation that the complainant was hit with an open-handed slap. While the medical records tended to lend support to the State's case, their untimely admission did not eviscerate or repudiate counsel's closing argument in the same manner or to the same degree as the supplemental charge in *Murray*. The complainant's credibility was still at issue, even after the records' admission.

Even assuming that the trial court erred by denying additional closing argument, appellant has not demonstrated harm. Appellant's only argument regarding harm is that he was not given an opportunity to minimize the impact of the medical records during closing argument. But appellant never identified to the trial court, or to this court on appeal, what his argument would have been had he been allowed to address the jury for a second time. Moreover, the medical records were cumulative of other evidence introduced at trial, which appellant thoroughly addressed in his closing summation. The record does not indicate what additional argument, if any, could be made that had not already been covered. We overrule appellant's first and second issues.

## CONCLUSION

The trial court erred by admitting new evidence after the parties had delivered their closing arguments. However, the error was not reversible because it did not affect appellant's substantial rights. Having overruled appellant's remaining points of error, we affirm the judgment of the trial court.

/s/    Adele Hedges
Chief Justice

Panel consists of Chief Justice Hedges and Justices Brown and Busby.

Do Not Publish — Tex. R. App. P. 47.2(b).