**Calixto GARCIA, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 01–06–00479–CR.**

Court of Appeals of Texas, Houston (1st Dist.).

Oct. 18, 2007.

---

Randy McDonald, Randy McDonald, P.C., Houston, for Appellant.

Charles A. Rosenthal, Jr., Dist. Atty.– Harris County, Celeste Carter Blackburn, Asst. Dist. Atty., Houston, for Appellee.

Panel consists of Chief Justice RADACK and Justices ALCALA and BLAND.

## OPINION

JANE BLAND, Justice.

After finding appellant Calixto Garcia guilty as charged of the offense of aggravated assault of a public servant, the jury assessed a sentence of fifty years' confinement. *See* TEX. PEN.CODE ANN. § 22.02(b)(2)(B) (Vernon Supp.2006). Garcia appeals only his sentence, complaining that the trial court committed reversible error during the punishment phase by (1) admitting testimony relating to his gang membership, affiliation, or association, and (2) admitting photographs of his gang-related tattoos in violation of his state and federal constitutional rights and Texas law. Finding no error, we affirm.

## Background

In November 2005, Garcia and another man approached Raul Moreno and three of his friends while they were repairing a truck in the parking lot of an apartment complex. Garcia had a gun, and his companion had a knife. Garcia racked his gun to chamber a round, pointed it at Moreno's head, and ordered the four men to get together while his companion took their property. Shortly after the robbery, Officer Juarez arrived on the scene and began investigating. One of the victims identified the apartment that Garcia and his companion entered following the robbery. As Officer Juarez approached the apartment, the door opened and a man entered the walkway, looked around, saw Officer Juarez, returned to the apartment, and shut the door.

While Officer Juarez called for backup, the apartment door opened again. Garcia appeared, pointing a gun directly at Officer Juarez. Garcia racked the gun and pulled the trigger, but the gun misfired. Garcia quickly retreated into the apartment and slammed the door. The police found Garcia in the apartment bedroom and arrested him. A grand jury later indicted Garcia for the robbery and aggravated assault of a public servant.

Garcia did not make any request pretrial that the State provide notice of its intent to introduce extraneous conduct evidence. Nevertheless, the State did so three months before trial. A month later, the State supplemented with specific notice of its intent to use evidence of Garcia's membership, affiliation, or association with the Southwest Cholos gang and, in an amendment two weeks before trial, notified Garcia of its intent also to use evidence of Garcia's membership, affiliation, or association with the "Houstone" prison gang. The State identified two witnesses it

planned to call to testify on the subject of gang affiliation. Further, one of the State's witnesses photographed Garcia's tattoos approximately three weeks before trial.

After the jury found Garcia guilty, the State sought to admit evidence of Garcia's gang membership or affiliation during the punishment phase of the trial. Garcia objected based on lack of notice required by articles 37.07 and 61.02 of the Texas Code of Criminal Procedure. The trial court overruled these objections.

Harris County Deputy Sheriff Scott, who had two and a half years of experience working with Houston-area criminal street gangs, testified during the punishment phase. The State entered the tattoo photographs into evidence through Scott, who had taken them. Scott identified several of the photos as depicting known gang tattoos that linked appellant to two Houston-area gangs, the Southwest Cholos and Houstone. Based on his knowledge, training, and experience, Scott opined that Garcia's tattoos identified him as a member of both the Southwest Cholos street gang and the Houstone prison gang.

Houston Police Officer Valles, a ten-year veteran and member of a gang patrol unit that experiences daily contact with the Southwest Cholos, also provided expert testimony concerning Houston-area criminal street gangs. Valles explained that the Southwest Cholos are involved in drive-by shootings, robberies, murders, home invasions, prostitution, narcotics, stolen cars, and graffiti. Deputy Scott testified that Houstone's criminal activities included aggravated assaults, murders, and robberies.

Defense counsel elicited testimony from Deputy Scott that, while he was photographing Garcia's tattoos, Garcia denied that he was an active member of the Southwest Cholos. Deputy Scott further testified that Garcia denied ever belonging to Houstone.

In addition to the gang-related evidence, the jury also considered Garcia's 1997 robbery conviction, for which he served five years in prison. The jury also heard from Garcia's former girlfriend, who testified that Garcia used to physically assault her in front of their children, and that he had been arrested for assaulting her.

## Discussion

*Standards for admission of evidence at the punishment phase*

■ Both of Garcia's issues on appeal contest the admission of evidence relating to gang membership, affiliation, or association during the punishment phase of trial. During the punishment phase, "evidence may be offered ... as to any matter the court deems relevant," including evidence of the defendant's reputation or character. TEX.CODE CRIM. PROC. ANN. art. 37.07, § 3(a)(1) (Vernon 2006). Relevance in this context is more a matter of policy than an application of Rule of Evidence 401; it fundamentally consists of what would be helpful to the jury in determining the appropriate punishment. *Mendiola v. State*, 21 S.W.3d 282, 285 (Tex.Crim.App.2000); *see* TEX.R. EVID. 401 (defining relevant evidence as evidence having any tendency to make existence of fact that is of consequence to determination of action more probable or less probable than it would be without evidence); *see also Payne v. Tennessee*, 501 U.S. 808, 820–821, 111 S.Ct. 2597, 2605–06, 115 L.Ed.2d 720 (1991) (observing that "the sentencing authority has always been free to consider a wide range of relevant material"); *United States v. Tucker*, 404 U.S. 443, 446, 92 S.Ct. 589, 591, 30 L.Ed.2d 592 (1972) (noting that, in sentencing proceeding, "a judge may appropriately conduct an inquiry broad in

scope, largely unlimited either as to the kind of information he may consider, or the source from which it may come").

Garcia relies on several grounds for challenging the admissibility of the gang-related evidence. We note at the outset that, contrary to his contention, article 61.02 of the Code of Criminal Procedure does not apply to his claims. That provision governs the creation of "an intelligence database for the purpose of investigating or prosecuting the criminal activities of criminal combinations or criminal street gangs." TEX.CODE CRIM. PROC. ANN. art. 61.02 (Vernon 2006). Garcia was not investigated for, tried for, or convicted of a gang-related crime. The restrictions outlined in article 61.02 apply only to the collection of gang-related information for the database, not to the admissibility of gang-related information during the punishment phase of a trial. *See id.*

■ Garcia rightly observes that the punishment-phase evidence of Garcia's membership, affiliation, or association with the Southwest Cholos and Houston gangs constitutes extraneous evidence of crimes or bad acts governed by article 37.07 of the Texas Code of Criminal Procedure and Rule of Evidence 404(b). *See* TEX.CODE CRIM. PROC. ANN. art 37.07, § 3(g) (Vernon 2006) (citing TEX.R. EVID. 404(b)). Article 37.07 provides that, "[o]n timely request by the defendant," the State must provide "reasonable notice . . . in advance of trial" of its intent to introduce extraneous-conduct evidence. TEX.CODE CRIM. PROC. ANN. art. 37.07, § 3(g) (Vernon 2006); *see* TEX.R. EVID. 404(b). The trial court has broad discretion to admit or exclude extraneous-conduct evidence. *See Brooks v. State,* 76 S.W.3d 426, 435 (Tex.App.-Hous-

ton [14th Dist.] 2002, no pet.) (applying this standard of review to admission of extraneous-conduct evidence over objection based on article 37.07, § 3(g)'s notice requirements).

■ Article 37.07 expressly states that "[t]he requirement under this subsection that the attorney representing the state give notice applies only if the defendant makes a timely request to the attorney representing the state for the notice." TEX.CODE CRIM. PROC. ANN. art. 37.07, § 3(g) (Vernon 2006). As the State points out, nothing in the record indicates that Garcia made a timely request that the State notify him of its intent to use extraneous conduct evidence. Garcia does not appear to contest this point. Consequently, nothing triggered an obligation for the State to provide Garcia with this notice.[1] *See Henderson v. State,* 29 S.W.3d 616, 625 (Tex.App.-Houston [1st Dist.] 2000, pet. ref'd). The trial court did not abuse its discretion in overruling Garcia's article 37.07 objection and allowing the jury to consider evidence of his gang membership, affiliation, or association in determining the appropriate sentence.

*Admission of expert opinion testimony relating to gangs*

Garcia also asserts that the opinion testimony of Scott and Valles should have been excluded either because it lacked relevance, or any probative value it had was substantially outweighed by the danger of unfair prejudice. TEX.R. EVID. 401, 403. We disagree with both assertions.

■ As a general matter, testimony regarding a defendant's affiliation with a gang may be relevant and admissible at the punishment phase to show the defen-

---

1. Also, as Garcia concedes, the State nevertheless apprised Garcia of its intent to use evidence of his membership, affiliation, or association with the Southwest Cholos and Houstone gangs at least two weeks before trial.

dant's character. *Beasley v. State,* 902 S.W.2d 452, 456 (Tex.Crim.App.1995); *Anderson v. State,* 901 S.W.2d 946, 950 (Tex.Crim.App.1995); *Ho v. State,* 171 S.W.3d 295, 305 (Tex.App.-Houston [14th Dist.] 2005, pet. ref'd) ("Even if appellant was no longer affiliated with the gang at the time of the shooting, evidence that he was a gang member is relevant—and thus admissible at punishment—because it relates to his character."); *see Dawson v. Delaware,* 503 U.S. 159, 161, 163, 112 S.Ct. 1093, 1096, 1097, 117 L.Ed.2d 309 (1992) (observing that evidence defendant is affiliated with association that has committed unlawful or violent acts can serve legitimate purpose in showing that defendant represents future danger to society); *U.S. v. Tampico,* 297 F.3d 396, 402–03 (5th Cir.2002) (concluding that fact that defendant was within First Amendment rights in belonging to organization advocating legalization of sexual relations with minors did not bar consideration of this evidence during sentencing); *Fuller v. Johnson,* 114 F.3d 491, 498 (5th Cir.1997) (holding that admission of evidence of defendant's membership in neo-nazi prison gang did not violate his constitutional rights; evidence that gang had committed unlawful or violent acts, including homicides, multiple stabbings, drug dealing, and aggravated assaults would permit reasonable juror to conclude that gang membership is relevant to future dangerousness). The evidence need not link the accused to the bad acts or misconduct generally engaged in by gang members, so long as the fact finder is (1) provided with evidence of the defendant's gang membership, (2) provided with evidence of character and reputation of the gang, (3) not required to determine if the defendant committed the bad acts or mis-

conduct, and (4) asked only to consider reputation or character of the accused.[2] *See Beasley,* 902 S.W.2d at 457.

■ The expert opinion testimony that certain of Garcia's tattoos had distinctive meanings and were common in either the Southwest Cholos or the Houstone gang supplied sound evidence of Garcia's gang membership. *See Beasley,* 902 S.W.2d at 454 (membership was established by defendant's wearing of gang colors and his association with gang members, not by witness testifying that he or she knew that defendant was in gang); *Anderson,* 901 S.W.2d at 948 (police officer testified that he knew defendant was gang member because he was in company of gang members and wore gang tee shirt); *Stevenson v. State,* 963 S.W.2d 801, 803–04 (Tex.App.-Fort Worth 1998, pet. ref'd) (police officer testified that defendant's tattoo had significance related to gang activity, and that defendant used phrase "what's up, cuz?" which has distinctive meanings in same gang); *Cabrera v. State,* No. 05–05–00450–CR, 2006 WL 952410, *2 (Tex.App.-Dallas Mar.30, 2006, pet. ref'd) (testimony from police officer that distinctive notches shaved into defendant's eyebrows, visible in book-in photograph, were common among members of certain gangs, from defendant's friend's mother that defendant talked about getting teardrop tattoo, which had gang meaning that tattooed person had killed someone, and that defendant associated with gang members, was enough to show gang membership). The evidence presented through the law enforcement gang experts also meets the other requirements set out in *Beasley.* *See* 902 S.W.2d at 457. Accordingly, it was neither irrelevant nor unfairly prejudicial. The trial court did not abuse its

2. Because, as noted above, article 61.02 does not apply to the admission of evidence, we reject Garcia's contention that the trial court could not admit evidence of Garcia's gang membership, affiliation, or association without article 61.02's required showing that Garcia admitted to being a member.

discretion in admitting this punishment-phase evidence.

*Admission of photographs depicting Garcia's tattoos*

■■■ Garcia's statutory and constitutional complaints concerning the admission of the tattoo photos are also unavailing. "[T]he Constitution does not protect criminal defendants from giving fingerprints, or standing in police lineups. It follows then, that a criminal defendant who is asked to display tattoos suffers no constitutional harm." *Gardner v. Norris,* 949 F.Supp. 1359, 1374–75 (E.D.Ark.1996) (citing *U.S. v. Bay,* 762 F.2d 1314, 1316–17 (9th Cir. 1984)). Requiring a defendant to display a distinguishing physical feature, such as a tattoo, does not violate the Fifth Amendment. *Garza v. State,* 213 S.W.3d 338, 347 (Tex.Crim.App.2007).

■■■ Garcia complains that the admission of photos also violated his rights under the Fourth, Sixth and Fourteenth Amendments of the United States Constitution and article 38.23 of the Texas Code of Criminal Procedure because the officer did not give him the required warnings before taking photos of his tattoos. Garcia, however, did not have a reasonable expectation of privacy concerning his tattoos, which appear on the front of his neck, his forearms, and his calves—all places that may be exposed while he is wearing street clothing. *See U.S. v. Dionisio,* 410 U.S. 1, 14–15, 93 S.Ct. 764, 771, 35 L.Ed.2d 67 (1973) (because person's voice, facial characteristics, or handwriting are constantly exposed to public, no person can

have reasonable expectation of privacy with respect to sound of his voice or features of physical appearance; thus, compelling person to disclose sound of voice to grand jury did not infringe on any interest protected by Fourth Amendment).[3]

■■■ "Article 38.22, § 3(a), applies only to oral statements made during custodial interrogation." *Holberg v. State,* 38 S.W.3d 137, 141 (Tex.Crim.App.2000); *Hernandez v. State,* 114 S.W.3d 58, 65 (Tex.App.-Fort Worth 2003, pet. ref'd). Because tattoos are not statements, article 38.22 of the Code of Criminal Procedure does not apply. *See Hernandez,* 114 S.W.3d at 65 (holding that officer's testimony regarding defendant's tattoos and manner of dress resulted from officer's personal observation and was not subject to exclusion under article 38.22). Accordingly, we conclude that Garcia's constitutional and statutory complaints concerning the trial court's admission of the tattoo photos lack merit.

## Conclusion

We conclude that the trial court acted within its sound discretion in admitting the evidence relating to Garcia's gang membership, affiliation, or association, and photographs of his gang-related tattoos. Finding no error in the punishment assessed by the jury and imposed by the trial court, we affirm the judgment of the trial court.

---

3. We overrule Garcia's complaint under the Sixth and Fourteenth Amendments of the United States Constitution for lack of briefing and citation to legal authority. Also, to the extent his claims under the Texas Constitution differ from those raised under the United States Constitution, we overrule them for the same reason. *See Arnold v. State,* 873 S.W.2d 27, 33 (Tex.Crim.App.1993) (refusing to ex-

amine state constitutional grounds where appellant failed to analyze, argue, or provide authority to establish that his protection under the Texas Constitution was different from that provided by the United States Constitution); *Rauscher v. State,* 129 S.W.3d 714, 723–24 (Tex.App.-Houston [1st Dist.] 2004, pet. ref'd) (same).