

COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | | |
|---|---|---|
| TRAVIS KIRCHNER, | § | No. 08-11-00368-CR |
| Appellant, | § | Appeal from the |
| v. | § | 41st District Court |
| THE STATE OF TEXAS, | § | of El Paso County, Texas |
| Appellee. | § | (TC#20100D00899) |

**O P I N I O N**

Travis Kirchner ("Kirchner" or "Appellant") appeals his sentence of twenty-nine (29) years' of confinement in the Institutional Division of the Texas Department of Criminal Justice and a fine of $10,000.00, imposed by a jury after Kirchner was found guilty of murder, in violation of Section 19.02(b)(1) of the Texas Penal Code. Kirchner brings two points of error: (1) the trial court committed reversible error by instructing the jury in a supplemental charge during the punishment phase that it could only consider Defense Exhibit 1 for the same limited purpose imposed during the guilt/innocence phase, resulting in an improper restriction on the jury's consideration of evidence in assessing a fair and appropriate sentence; and (2) reversible error by the trial court in constructively denying Kirchner right to counsel and notice by supplementing the jury charge with an erroneous instruction after final arguments had concluded, which undercut defense counsel's arguments regarding Defense Exhibit 1. For the reasons set out below, we

affirm.

## BACKGROUND

Patricia Kirchner ("Mrs. Kirchner") was found dead in the garage of her home in El Paso. The medical examiner determined that she died of carbon-monoxide poisoning. Kirchner was the son of Mrs. Kirchner.

Mrs. Kirchner's health had begun to decline. She had also become depressed about civil lawsuits that had been filed by her sister, brother-in-law, and neighbors. Witnesses testified that Mrs. Kirchner believed that a person had a right to end their life; that she approved of suicide and euthanasia; and that she approved the work of Dr. Jack Kevorkian, the so-called "suicide doctor." One witness at trial testified that Mrs. Kirchner said "I wish that when my time came, that mercy killing was legal." Mrs. Kirchner also told others that she wanted to die because of the lawsuits, her failing health, and her broken relationship with her sister.

At trial, Kirchner testified extensively during the guilt/innocence phase in support of his defense that suicide was common in the Kirchner family. According to Kirchner, he and his mom had entered into a suicide pact. Specifically, Kirchner testified about his mother's deteriorating health and the effect of the lawsuits upon her; that he was also depressed about the lawsuits; and described what he claimed were the suicides of his father and sister, as well as his own multiple prior suicide attempts. Kirchner recounted that, after the last judgment in the civil suits, he and his mother drove to High Rolls, New Mexico, to get away from their troubles. While there, Mrs. Kirchner told him that she wished she were dead and was contemplating suicide, to which Kirchner responded that he was having the same thoughts.[1]

---

[1] At trial, the State objected to Kirchner's hearsay testimony at the start of this testimony, which the trial court overruled.

2

According to Kirchner, the two spent the night planning their deaths, including not only how to accomplish it in the least painful way, but also how their property and assets would be distributed. The next day, after returning to El Paso, Kirchner began transferring assets and property to the people they designated. Kirchner also taped up the cat door leading into the garage at Mrs. Kirchner's house and taped up a gap in some of the windows in the garage.

On the day of the incident, Kirchner rented a PT Cruiser to use to deliver the fatal exhaust fumes. Kirchner parked the rental car inside the garage at Mrs. Kirchner's house. Kirchner also prepared packets for his close friends, each packet containing a note, photographs, instructions, and/or money or personal objects. Kirchner testified Mrs. Kirchner wrote a suicide note and showed it to Kirchner.

That night, Kirchner after checking on his mother, met his neighbor, Maureen Richter ("Richter") outside of her house to have some drinks. As they were drinking, Kirchner asked Richter for two Ambien pills, a prescription sleeping-aid, telling her he was having trouble sleeping, and Richter gave Kirchner the pills. Kirchner took the pills back to Mrs. Kirchner's house and gave them to her so she could relax. Kirchner then took an Ambien and two Percodan (pain-killers) that he already had. Kirchner then returned to Richter's house, where they finished drinking their margaritas.

Kirchner then returned to his mother's house where he found her asleep. He woke her and told her it was time, to which she responded "Oh, okay." Kirchner helped her as they walked into the garage. Kirchner helped his mother into the vehicle. Kirchner then started the car and laid back.

The next thing Kirchner remembered was leaning out of the car window and vomiting.

3

He did not see his mother in the car, and he testified that he thought "[t]his is going terribly, terribly wrong. What has happened?" Thinking that his mother had changed her mind, Kirchner left the garage to search for her, but when he could not find her, he returned to the garage where he discovered her on the floor between the car and the wall of the garage. Kirchner, seeing she "was too still," believed she was dead.

According to Kirchner, he then sat down and began taking deep breaths of the exhaust fumes. After that, Kirchner decided that he would hang himself. Kirchner found an electrical extension cord and tried to hang himself, but failed. Kirchner then lay down on the garage floor and "hoped for the best." After a while, the car's engine stopped running. Kirchner stated then "things started clearing up," and he went inside the house. Kirchner called 911 and told the operator "I think my mother has committed suicide." After making the call, Kirchner lay down on his bed until the police arrived.

## AT TRIAL

Kirchner was indicted for murder, specifically, that Kirchner "did then and there intentionally or knowingly cause the death of an individual namely, PATRICIA KIRCHNER by carbon monoxide poisoning." The indictment alleged that Kirchner used or exhibited a deadly weapon during the commission of the offense, to-wit, carbon monoxide.[2]

During the guilt/innocence phase, Kirchner sought to introduce Mrs. Kirchner's suicide note into evidence. When the issue of the note was first raised, the trial judge initially indicated that she would allow Kirchner to testify as to the note, without stating the basis for such admission. The State objected that the note did not qualify as a dying declaration and was an improper recitation by Mrs. Kirchner of past events, not a statement of future conduct, while counsel for

---

[2] The indictment does not include any lesser-included offenses, nor were any requested at trial or in the charge.

4

Kirchner contented that the note was admissible either as a dying declaration or that the note described Mrs. Kirchner's state of mind at the time of the incident, qualifying as a state-of-mind exception to the hearsay rule. Arguments were held in chambers regarding the note and other evidentiary issues, and the trial court announced on the record that she had made her rulings in chambers and that the rulings would be apparent during the course of the testimony.

During Kirchner's testimony, counsel for the defense marked the purported suicide note as Defense Exhibit 1, and the State objected that it was hearsay. Defense counsel argued that the note "goes to the state of mind" of both Kirchner and Mrs. Kirchner. After Kirchner identified the note as what his mother had written and shown to him the day before the incident, defense counsel offered the note into evidence. The State again objected. The trial court noted that the defense had explained that they were not offering the note for the truth of the matter asserted, but only to show the state of mind of Mrs. Kirchner.[3] The trial court overruled the State's objection and admitted the note into evidence, but orally instructed the jury that the note was being admitted "only to show you the state of mind of Mrs. Kirchner, if you believe it to go to her state of mind." The trial court indicated that it would include an instruction in the jury charge. Kirchner then read the note to the jury.

In its written charge to the jury during the guilt/innocence phase of trial, the trial court issued the following instruction regarding the evidence and the note:

> You are instructed that you may consider all relevant facts and circumstances surrounding the killing, if any, and the previous relationship existing between the accused and the deceased, together with all relevant facts and circumstances going to show the condition of the mind of the accused at the time of the offense, if any.
> You are further instructed that any note purported to be signed by Patricia Kirchner was not offered for the truth of the matter, rather it was offered as a

---

[3] Counsel for the defense did not refute or object to this statement when the trial court made its ruling.

statement of present state of mind. You are instructed that you may only consider said note in determining the then existing mental or emotional condition of Patricia Kirchner close to the time of her death, and for no other purpose.

The jury charge also provided that:

You are the exclusive judges of the facts proved or the credibility of the witnesses, and of the weight to be given to the testimony, but you are bound to receive the law from the Court as it is given to you in this charge, and you are bound to be governed thereby.

No objection to the guilt/innocence jury charge by either the State or Kirchner was presented. During closing, Kirchner's arguments focused on the defense theory that Mrs. Kirchner wanted to take her own life and that Kirchner, as a "good son," was guilty only of helping her do so.

Following the guilty verdict by the jury, the case proceeded directly to the punishment phase. The State's punishment evidence included a number of extraneous bad acts and descriptions of Kirchner's behavior, including his threat to kill the daughter of an attorney who represented one of the opposing parties in the civil lawsuits against Kirchner. After the State rested, Kirchner presented his punishment evidence. Both parties rested and closed without formally re-offering the guilt/innocence evidence.

During its punishment closing argument, the State acknowledged that the jury could consider all the evidence already before them from the guilt/innocence phase and that they could use it "for whatever purposes that you want to." Defense counsel similarly argued that although the jurors may have been restricted in how they used the evidence before, they could now consider it for all intended purposes.[4] The defense did not mention the suicide note in its closing argument,

---

[4] Neither the State or Kirchner objected to either side's characterization of the evidence during the closing punishment arguments.

6

other than the jurors could consider the note "as evidence of a suicide."[5]

The trial court's original punishment charge did not include any instruction limiting the jury's consideration of the purported suicide note. Neither the State nor Kirchner objected to the charge in relation to the note. During deliberations, the jury sent out a note inquiring as to whether they should refer to the original charge (guilt/innocence) or just the punishment charge. The trial court noted that she did not understand the question, and asked the jury to clarify what it was they were asking. The following exchange occurred:

> Juror: The original set of rules given for the charge, we went through those. Those are now set aside. Then we're given the rules in punishment. Someone is going back to the rules of the charge and saying, Well, in this rule, we do this and this.
> I said Don't refer to that. We need to just stick to the punishment phase.
>
> The Court: Okay. I need to know which rules, though, is the dispute.
>
> [juror discussion omitted]
>
> Juror: Page 4, section 5 on the charge.
>
> The Court: Okay. And that is the one that says: 'you may consider all relevant facts and circumstances surrounding the killing, if any, and all the relevant facts and circumstances.'
> And the second paragraph is; 'Any note is not offered for the truth of the matter. It's offered as a statement of present state of mind. You may only consider said note in determining the then existing mental or emotional condition of Patricia Kirchner close to the time of her death and for no other purpose.'
> So is it one of those paragraphs?
>
> Juror: The second paragraph.
>
> The Court: The second paragraph. That's what you want to know about?
>
> Juror: Yes, ma'am.

The court sent the jury out and heard arguments from counsel on this issue. Kirchner's

---

[5] The State did not object to this statement.

counsel first argued that the court should instruct the jurors that they were to be guided by the punishment charge. The State argued that the defense had improperly argued jurors could consider Mrs. Kirchner's note in any way which was contrary to the court's initial instructions, that is, that jurors could only consider the note for the limited purpose for which it was actually offered and admitted in the guilt/innocence phase of the trial. The trial court ruled that she was going to reiterate the original limiting instruction to the jury in the punishment charge. Defense counsel raised two objections to the proposed supplemental instruction: (1) that it denied Kirchner the right to a fair and impartial trial under the Fourth, Fifth, Sixth, and Fourteenth Amendments to the United States Constitution, as well as Article I, section 10 of the Texas Constitution; and (2) that it constituted an additional comment on the facts of the case by the court. The trial court overruled these objections, noting that the language was as it was previously given to the jury without objection, and that this was just a reiteration of the same language.[6]

## DISCUSSION

Kirchner brings two points of error: (1) the trial court committed reversible error by instructing the jury in a supplemental charge during the punishment phase that it could only consider Defense Exhibit 1 for the same limited purpose imposed during the guilt/innocence phase, resulting in an improper restriction on the jury's consideration of evidence in assessing a fair and appropriate sentence; and (2) reversible error by the trial court in constructively denying Kirchner right to counsel and notice by supplementing the jury charge with an erroneous instruction after final arguments had concluded, which undercut defense counsel's arguments

---

[6] Although the court indicated that it would submit the supplemental limiting instruction to the jury in writing, however no such written charge is included in the record. We abated the appeal so that the trial court could make findings of fact regarding the supplemental limiting instruction complained of. The trial court found the supplemental limiting instruction was actually submitted to the jury and is the same which was read into the record by the court. However, the actual supplemental limiting instruction provided to the jury has been lost or destroyed.

8

regarding Defense Exhibit 1.[7]

## Limitation of Defense Exhibit 1 During Punishment Phase

Kirchner first asserts that the trial court erred by issuing a supplemental jury instruction after the jury had commenced its punishment deliberations, which restricted how the jury could consider Defense Exhibit 1, the purported suicide note. Kirchner argues that this violates the Code of Criminal Procedure, § 37.07(3)(a)(1), as it is an inappropriate limitation of the evidence the jury would be allowed to consider. Kirchner offers multiple ways the note could be relevant under Rule 803(3) of the Rules of Evidence, and argues that the note was a vital part of his defensive theory that this was a joint suicide, and that in addition to indicating Mrs. Kirchner's intent to commit suicide, the note established the intentions and mind set of Kirchner to partake in a joint suicide. He contends that the trial court's limitation of the jury's consideration of the note during sentencing limited the jury's ability to assess a fair and just sentence, as well as constructively denying him his right to counsel. Kirchner also asserts that the trial court improperly commented on the evidence through its limitation.

## Applicable law and standard of review

"Unlike the guilt-innocence phase, the question at punishment is not whether the defendant has committed a crime, but instead what sentence should be assessed." *Haley v. State*, 173 S.W.3d 510, 515 (Tex.Crim.App. 2005), *citing Sunbury v. State*, 88 S.W.3d 229, 234 (Tex.Crim.App. 2002), and *Rogers v. State*, 991 S.W.2d 263, 265 (Tex.Crim.App. 1999).

Section 3(a) of Article 37.07 in the Texas Code of Criminal Procedure governs the admissibility of evidence during the punishment stage of a non-capital criminal trial. *Erazo v. State*, 144 S.W.3d 487, 491 (Tex.Crim.App. 2004). Article 37.07, section 3(a)(1) states that in

---

[7] Kirchner does not appeal either the legal or factual sufficiency of his conviction.

the punishment phase:

> [E]vidence may be offered by the [S]tate and the defendant as to any matter the court deems relevant to sentencing, including but not limited to the prior criminal record of the defendant, his general reputation, his character, an opinion regarding his character, the circumstances of the offense for which he is being tried, and . . . any other evidence of an extraneous crime or bad act . . . .

TEX.CODE CRIM.PROC.ANN. art. 37.07, § 3(a)(1)(West Supp. 2013).

As explained by the Court of Criminal Appeals, the relevance of evidence during the punishment phase of a non-capital trial is determined by what is "helpful" to the jury. *Erazo*, 144 S.W.3d at 491. With regard to evidence to be introduced during the punishment phase, "[r]elevance in this context is more a matter of policy than an application of Rule of Evidence 401; it fundamentally consists of what would be helpful to the jury in determining the appropriate punishment." *Garcia v. State*, 239 S.W.3d 862, 865 (Tex.App.--Houston [1st Dist.] 2007, pet. ref'd), *citing Mendiola v. State*, 21 S.W.3d 282, 285 (Tex.Crim.App. 2000) and TEX.R. EVID. 401 (defining relevant evidence as evidence having any tendency to make existence of fact that is of consequence to determination of action more probable or less probable than it would be without evidence). However, a trial court may exclude relevant evidence if its probative value is substantially outweighed by the danger of unfair prejudice.[8] *See* TEX.R.EVID. 403. When a trial court gives a limiting instruction, the jury may only consider the evidence for the purpose for which it was admitted. *See* TEX.R.EVID. 105(a).

The ability of a trial court to amend or supplement a jury charge is set out in Article 36.16 of the Texas Criminal Code:

---

[8] A trial court's ruling as to the admissibility of evidence under Article 37.07 is reviewed under an abuse of discretion standard. *See Mitchell v. State*, 931 S.W.2d 950, 953 (Tex.Crim.App. 1996). The trial court abuses its discretion by admitting evidence only when the decision lies outside the zone of reasonable disagreement. *Davis v. State*, 329 S.W.3d 798, 803 (Tex.Crim.App. 2010); *Moses v. State*, 105 S.W.3d 622, 627 (Tex.Crim.App. 2003).

After the judge shall have received the objections to his main charge, together with any special charges offered, he may make such changes in his main charge as he may deem proper, and the defendant or his counsel shall have the opportunity to present their objections thereto and in the same manner as is provided in Article 36.15, and thereupon the judge shall read his charge to the jury as finally written, together with any special charges given, and no further exception or objection shall be required of the defendant in order to preserve any objections or exceptions theretofore made. After the argument begins no further charge shall be given to the jury unless required by the improper argument of counsel or the request of the jury, or unless the judge shall, in his discretion, permit the introduction of other testimony, and in the event of such further charge, the defendant or his counsel shall have the right to present objections in the same manner as is prescribed in Article 36.15. The failure of the court to give the defendant or his counsel a reasonable time to examine the charge and specify the ground of objection shall be subject to review either in the trial court or in the appellate court.

TEX.CODE CRIM.PROC.ANN. art. 36.16 (West 2006).

The jury is bound to be governed by the law it receives from the court. TEX.CODE CRIM.PROC.ANN. art. 36.13 (West 2007); *Whaley v. State*, 717 S.W.2d 26, 32 (Tex.Crim.App. 1986). When the trial court responds substantively to a question the jury asks during deliberations, that communication essentially amounts to a supplemental jury instruction, and the trial court must follow the same rules for impartiality and neutrality that generally govern jury instructions. *Lucio v. State*, 353 S.W.3d 873, 875 (Tex.Crim.App. 2011), *citing Daniell v. State*, 848 S.W.2d 145, 147 (Tex.Crim.App. 1993). Because a trial court's answer to a jury's question must comply with the same rules that govern charges, as a general rule the trial court must limit its answer to setting forth the law applicable to the case; it must not express any opinion as to the weight of the evidence, sum up the testimony, discuss the facts, or use any response calculated to arouse the sympathy or excite the passions of the jury. *See* TEX.CODE CRIM.PROC.ANN. art. 36.14; *Bartlett v. State*, 270 S.W.3d 147, 152 (Tex.Crim.App. 2008).

We review claims of jury charge error under the two-pronged test set out in *Almanza v.*

11

*State*, 686 S.W.2d 157, 171 (Tex.Crim.App. 1985)(op. on reh'g). We first determine whether error exists. *Ngo v. State*, 175 S.W.3d 738, 743 (Tex.Crim.App. 2005). If error exists, we then evaluate the harm caused by the error. *Id.* at 743. The degree of harm required for reversal depends on whether that error was preserved in the trial court. When error is preserved in the trial court by timely objection, the record must show only "some harm." *Almanza*, 686 S.W.2d at 171. By contrast, unobjected-to charge error requires reversal only if it resulted in "egregious harm." *See Neal v. State*, 256 S.W.3d 264, 278 (Tex.Crim.App. 2008).

If error occurred and the appellant objected at trial, we determine whether the error was "calculated to injure" the appellant's rights, which means there must be "some harm" to the accused resulting from the error. *Barrios v. State*, 283 S.W.3d 348, 350 (Tex.Crim.App. 2009); TEX.CODE CRIM.PROC.ANN. art. 36.19 (West 2006). In our review, we determine whether the error was calculated to injure the rights of the defendant examined "in light of the entire jury charge, the state of the evidence, including the contested issues and weight of probative evidence, the argument of counsel and any other relevant information revealed by the record of the trial as a whole." *Almanza*, 686 S.W.2d at 171; *see* TEX.CODE CRIM.PROC.ANN. art. 36.19. Neither party has a burden to show harm under the "some harm" analysis. *See Warner v. State*, 245 S.W.3d 458, 462, 464 (Tex.Crim.App. 2008). Yet, there must be actual, as opposed to possible, harm. *Medina v. State*, 7 S.W.3d 633, 643 (Tex.Crim.App. 1999). Significant evidence militating against a defense-requested instruction or finding can render an error harmless. *Medina*, 7 S.W.3d at 642-43.

An egregious harm determination must be based on a finding of actual rather than theoretical harm. *Cosio v. State*, 353 S.W.3d 766, 776–77 (Tex.Crim.App. 2011). For actual

harm to be established, the charge error must have affected the very basis of the case, deprived the defendant of a valuable right, or vitally affected a defensive theory. *Id.* "Egregious harm is a difficult standard to prove and such a determination must be done on a case-by-case basis." *Hutch v. State*, 922 S.W.2d 166, 171 (Tex.Crim.App. 1996).

### Application of law to facts

In the instant case, the jury sent a written request to the trial court seeking clarification on the charge it had been given. The jurors explained that they sought clarification regarding the limiting instruction concerning the note from the guilt/innocence phase. The trial court, after hearing the arguments and objections of counsel, issued a supplemental instruction where the trial court reiterated, with no additional comment, the limiting instruction in the guilt/innocence phase.

Trial courts may give further written instructions upon the jury's written request for additional guidance regarding applicable law, which is the situation in the instant case. *See* TEX.CODE CRIM.PROC.ANN. art. 36.16 (providing that court may give "further charge" to jury upon jury's request after parties finish closing arguments). The Court of Criminal Appeals addressed this issue in *Lucio*, 353 S.W.3d at 876. The *Lucio* court analyzed a prior decision, *Green v. State*, 912 S.W.2d 189 (Tex.Crim.App. 1995), in its decision. In *Green*, after submitting to the trial court multiple requests for clarification, the jury asked whether a witness had "stated [appellant] had 'emotional problems,'" to which the trial court responded that the witness "never used the term 'emotional problems'!" *Green,* 912 S.W.2d at 192. The Court of Criminal Appeals held that this response was not an improper comment on the weight of the evidence, stating that "[t]he trial court responded to a narrow and straightforward jury question with a narrow and straightforward answer that was responsive to the question asked." *Id*. at 193. The Court of

13

Criminal Appeals explained that the response "expressed no opinion that [the witness's] testimony did not support a conclusion appellant had 'emotional problems,'" and was "an objective conclusion based on the record concerning a dispute among the jury about the testimony of a witness." *Green*, 912 S.W.2d at 193. The court also noted that the trial court's response had no bearing on whether the jury should consider any aspects of the defendant's testimony as mitigating, and did not instruct the jury to disregard any mitigating aspects of the testimony. *Id.*

In *Lucio*, the jury sent a note to the trial court after deliberations commenced inquiring about limitations on who can speak as a character witness during sentencing. *Lucio*, 353 S.W.3d at 874. The trial court responded, and the jury sent a further question regarding whether the law prohibited family members from testifying for a defendant. *Id.* After discussion with both counsel, the trial court issued another instruction, over the objection of counsel for the defense. *Id.* at 874-75. Lucio was convicted and appealed, and the Fort Worth Court of Appeals affirmed. *Id.* at 875. Following its review of *Green*, the Court of Criminal Appeals concluded that:

> [T]he general rule that prohibits the court from singling out a particular piece of evidence in its instructions to the jury given prior to jury deliberations does not necessarily apply when the court merely responds to the jury's question concerning a subject identified by the jury alone.

*Lucio*, 353 S.W.3d at 877.

We find the facts in the instant case analogous to the jury question and responses in *Green* and *Lucio*. We find no reversible error by the trial court in issuing a supplemental instruction to the jury, after deliberations had commenced, where the trial court was responding to a jury question after deliberations had commenced.

Kirchner further asserts that the supplemental charge acted as an improper comment on the weight of this evidence. We find that the trial court here responded to the jury's question about a

14

subject identified by the jury alone, and, in light of the specific language utilized by the trial court in its supplemental charge (the identical language used in the guilt/innocence charge which was not objected to by either party), we find that the trial court did not make an inappropriate comment on the evidence.   *See Lucio*, 353 S.W.3d at 877; *Green*, 921 S.W.2d at 192-93.

Kirchner also argues that the purported suicide note could have been admissible under multiple grounds pursuant to Rule 803(3) of the Texas Rules of Evidence, and as such was relevant under Article 37.07 in assessing punishment.   However, the note was not reintroduced into evidence during the punishment phase[9] – it was only referenced in the closing argument.[10]   While both the State and Kirchner argued that the jury could consider all the evidence from the guilt/innocence phase "for whatever purposes that you want to," and the jury could now consider the evidence for all intended purposes, no change in the original limiting instruction was sought by either the State or Kirchner.

We note a line of cases involving limiting instructions issued during the guilt/innocence phase regarding extraneous offenses, whose reasoning and holdings we find applicable to the case before us:   *Gillon v. State*, 492 S.W.2d 948 (Tex.Crim.App. 1973), *cert. denied*, 414 U.S. 924, 94 S.Ct. 255, 38 L.Ed.2d 158 (1973); *Henriksen v. State*, 500 S.W.2d 491 (Tex.Crim.App. 1973); *January v. State*, 678 S.W.2d 243 (Tex.App.--Corpus Christi 1984, pet. ref'd); *Walker v. State,* 701 S.W.2d 316, 321 (Tex.App.--Austin 1985 pet. ref'd).

In *Gillon*, the punishment charge incorporated by reference the limiting charge from the

---

[9] Neither party re-offered guilt/innocence evidence at the punishment hearing, though we note that there is no requirement that evidence admitted at guilt phase must be re-offered before it can be considered at punishment. *Davis*, 329 S.W.3d at 820, *citing Trevino v. State*, 100 S.W.3d 232, 238 (Tex.Crim.App. 2003).

[10] Arguments of counsel are not evidence on which a verdict can be based.   *See Chase v. State*, 750 S.W.2d 41, 43 (Tex.App.--Fort Worth 1988, pet. ref'd); *McCain v. NME Hosps., Inc.*, 856 S.W.2d 751, 757 (Tex.App.--Dallas 1993, no pet.).

guilt-innocence stage of the trial as to extraneous offenses, and this was held sufficient to protect the appellant's rights. *Gillon*, 492 S.W.2d at 949. *Henriksen* is even more apropos to the instant case. There, extraneous offense evidence was introduced during guilt/innocence but was not adduced in the punishment phase. *Henricksen*, 500 S.W.2d at 496. The court instructed the jury on the limited use of that evidence at the guilt-innocence stage of the trial, and instructed the jury it could use the evidence for no other purpose. *Id.* The jury was also instructed that the limiting charge contained the law applicable to the case. *Id.* The punishment charge instructed the jury "to set the punishment in accordance with the law." *Id.* The Court of Criminal Appeals, approving *Gillon*, found no error. *Henricksen*, 500 S.W.2d at 496. In *January*, the guilt-innocence charge was similar to the *Henricksen* charge, while the punishment charge instructed the jury to assess punishment "on the facts of the case as testified to by the witnesses and the law as given you in the charge of the court." *January*, 678 S.W.2d at 245. The Court of Appeals found no reversible error in the lack of a limiting instruction in the punishment charge. *Id.* The guilt/innocence charge in *Walker* instructed that the extraneous offenses could be considered for "no other purpose" and that the law applicable to the case was stated therein. *Walker*, 700 S.W.2d at 321. The Court of Appeals held that:

> While the punishment charge did not explicitly incorporate the earlier charge, failure to so incorporate is not reversible error. While the better practice would have been to grant the requested instruction limiting consideration of the unadjudicated extraneous offense at the punishment stage, we find no reversible error because the earlier charge specifically limited the jury's consideration of this offense to that contained in the charge *and for no other purpose,* and this charge contained the law applicable to the case. [Emphasis in orig.].

*Walker*, 700 S.W.2d at 321.

In the instant case, the trial court's charge during the guilt/innocence stage included a

specific instruction limiting the jury's use of evidence as to the weight it should give the note; specifically, that the jury could consider the note "in determining the then existing mental or emotional condition of Patricia Kirchner close to the time of her death, *and for no other purpose*." [Emphasis added].   As in *Henriksen*, the charge at the guilt-innocence stage of the instant appeal stated that the law applicable to the case was contained therein.   *Henricksen*, 500 S.W.2d at 496.

The trial court's charge during the punishment phase of the instant case contained the following instruction:

> You are the exclusive judges of the facts proved or the credibility of the witnesses, and of the weight to be given to the testimony, *but you are bound to receive the law from the Court as it is given to you in this charge*, and you are bound to be governed thereby.   [Emphasis added].

Thus, the trial court expressly incorporated the law submitted in its guilt/innocence charge into the charge given during the punishment phase, including the proper limiting instruction regarding the note.   We find no reversible error by the trial court in maintaining the limitation on the note originally set out in the guilt/innocence charge and incorporated into the punishment charge.   *Henriksen*, 500 S.W.2d at 496; *Gillon*, 492 S.W.2d at 949; *January*, 678 S.W.2d at 245. We find no error by the trial court in its supplemental instruction during the punishment phase and we overrule Kirchner's first point of error.   *See Ngo*, 175 S.W.3d at 743.

**Constructive Denial of Right to Counsel and Undercutting Counsel's Argument**

Kirchner's second point of error argues that, by issuing the supplemental instruction after counsel had made his final summation, the trial court contradicted defense counsel's argument and constrictively denied Kirchner effective assistance of counsel.   Kirchner relies, in part, on *Murray v. State*, 857 S.W.2d 806 (Tex.App.--Fort Worth 1993, pet. ref'd) in support of this argument, however we find this case distinguishable.

17

In *Murray*, the trial court originally submitted an incomplete definition of the charged robbery offense to the jury and, based on the incomplete definition, defense counsel argued that the State had failed to prove the charged offense. *Murray*, 857 S.W.2d at 807. After the jury began deliberations, the trial court, on the request of the prosecutor, supplemented the charge with the full definition of the offense. *Id.* at 807-8. Murray was found guilty and appealed. *Id.* at 808. The Court of Appeals reversed, finding that Murray was constructively denied a right to counsel by the supplemental instruction which was substantially different than the charge which defense counsel had originally made and which had the effect "tantamount to denying jury argument . . . ." *Id.* at 810-12. The reviewing court found reversible error because the supplemental instruction was equivalent to the trial court's "answering defense counsel's oral argument with a written rebuttal." *Id.* at 811, *quoting Moore v. State*, 848 S.W.2d 920, 923 (Tex.App.--Houston [1st Dist.] 1993, pet. ref'd). *See also Garza v. State*, 55 S.W.3d 74, 77 (Tex.App.--Corpus Christi 2001, pet. ref'd)(finding that jury did not request further instruction and lack of other prerequisites of Article 36.16 and finding that erroneous submission of lesser included offense of kidnapping, after the jury began deliberations, caused egregious harm). There was "no request of the jury" in *Murray* or in *Garza*, a point which immediately distinguishes these from the instant case.

Kirchner argues that the supplemental instruction limited the mitigating effect of the note, which vitally affected the defensive theory asserted by Kirchner. Kirchner alleges he was harmed by the limiting instruction which prohibited the jury from making use of Defense Exhibit 1 for any reason other than the limited purpose authorized by the trial court. Therefore, the jury could not consider Kirchner's state of mind and the joint conduct of Kirchner and Mrs. Kirchner. However, the suicide was barely touched on during the closing arguments of the punishment phase, absent

18

the single mention that the jurors could consider the note "as evidence of a suicide." There was no dispute at trial that Kirchner caused the death of Mrs. Kirchner, as he confessed to doing so to police, friends, and in his testimony before the jury. Kirchner testified, with the State's hearsay objection overruled, that he and Mrs. Kirchner both had suicidal thoughts and that they planned a joint suicide, including how to do it in the least painful way and how their property was to be distributed. The defense was able to present the defensive theory that this was a joint suicide, both during the guilt/innocence and punishment phase. That the jury was prohibited from considering the note for all purposes, particularly in light of the extensive testimony of Kirchner himself as to the salient points of his defensive theory, does not rise to the level of the supplemental jury charge answering defense counsel's arguments. This evidence was before the jury in both the guilt/innocence phase and during the punishment phase. In the instant case, similar to the trial court's response in *Green*, the trial court here never issued instructions which had bearing on whether the jury should consider any aspects of Kirchner's testimony as mitigating, and did not instruct the jury to disregard any mitigating aspects of the testimony. *Green*, 912 S.W.2d at 193. We do not find reversible error and Kirchner's second point of error is overruled.

## CONCLUSION

Having overruled both of Kirchner's points of error, the judgment of the trial court is hereby affirmed.

May 16, 2014

YVONNE T. RODRIGUEZ, Justice

Before McClure, C.J., Rodriguez, J., and Larsen, Senior Judge
Larsen, Senior Judge (Sitting by Assignment)

(Do Not Publish)

19