**AFFIRM; and Opinion Filed November 3, 2015.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-14-01264-CR

**DEMUNTRA RASHARD GREEN, Appellant**
**V.**
**THE STATE OF TEXAS, Appellee**

**On Appeal from the 195th Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. F-1356459-N**

## MEMORANDUM OPINION

Before Justices Evans, Whitehill and Schenck
Opinion by Justice Schenck

Demuntra Rashard Green appeals his conviction for the murder of Vasile Cartojan,

challenging the legal sufficiency of the evidence and the admission of evidence of his possible

gang affiliation. We affirm his conviction. Because all issues are settled in law, we issue this

memorandum opinion. TEX. R. APP. P. 47.4.

### BACKGROUND

On the evening of May 19, 2013, Vasile Cartojan was shot and killed outside his

townhouse located in northeast Dallas. Prior to the shooting, Cartojan and his girlfriend Kai

Kannapas were relaxing on his patio. While they were on the patio, Kannapas noticed someone

backing Cartojan's silver BMS out of its carport. She alerted Cartojan to this fact, and he ran out

to the alley. Shortly thereafter, Kannapas heard a pop noise, and then Cartojan cried out to her,

"Call 911; I've been shot." Kannapas retrieved her phone and called 911. At the direction of the

911 operator, Kannapas performed CPR on Cartojan as she awaited emergency responders. Cartojan did not survive. His cause of death was a gunshot wound that entered his chest and went into his abdomen, perforating the diaphragm, liver, stomach, and aorta.

During the course of their investigation, police officers recovered Cartojan's car and collected as additional evidence a sandal, a pair of sunglasses, cigarettes, a black bag containing eight small baggies containing marijuana, and a "brown-looking cigarette." DNA left on the items would prove of value in the ensuing investigation.

The homicide detective assigned to the case distributed flyers at a nearby apartment complex asking for information related to Cartojan's death. The apartment complex was the scene of a significant fire during the early morning hours on the day after Cartojan's death. Tabroderick Washington, one of the residents of the apartments, whose apartment was completely destroyed, agreed to speak with the detective about his encounter with appellant and others.

Washington told the detective that during the afternoon of the day of the fire, he took his dogs to a friend's apartment in the same complex with the intent of asking her to look after them. A number of people were at the apartment including appellant, who is known as "Tubs;" Ryan Norris, known as "Spud;" and Jaquincey Bush, known as "Quincy." Washington heard everyone at the apartment talking but did not initially pay attention to what they were saying. He noticed, however, that Bush "looked like he was sad, kind of scared a little bit," and like he had been crying. Washington heard appellant say something along the lines of "that nigga didn't want to give me the keys or the car." Washington saw appellant, Norris, and Bush leave the apartment in a silver BMW.

Based on information from Washington and other witnesses, appellant was identified as one of three suspects in the murder of Cartojan. A warrant issued for his arrest and he was

–2–

charged with capital murder. Appellant's DNA profile was consistent with the DNA found on two swabbings of the items collected during the investigation.

At trial, the State presented testimony from Cartojan's sister Eugenia Anghel, witnesses Kannapas and Washington, officers involved in the investigation and the collection of evidence, a forensic pathologist, and a forensic biologist. Appellant elected not to testify during the guilt-innocence phase of the trial, and the defense rested at the conclusion of the State's case. The jury found appellant guilty of murder.

Both parties presented evidence during the punishment phase. The State called Cartojan's sister and girlfriend to testify about the impact Cartojan's murder has had on them and Cartojan's family. In addition, the State called Detective Barry Nelson to testify about the gang-related tattoos on appellant's body. He testified that Four Deuce is a gang from south Dallas—a Crips gang. He explained that tattoos have great significance in gang cultures at present and testified regarding his familiarity with gang culture and the significance of certain tattoos. He viewed pictures of appellant's tattoos and concluded, based upon his extensive experience with gangs, that appellant was a member of the "Four Deuce" criminal street gang. Of significance to Detective Nelson were the following tattoos: a "South Dallas" tattoo on appellant's face (south Dallas is the location of the Four Deuce gang); a tattoo of an address in south Dallas where members of the Four Deuce gang hang out; a "42" tattoo (symbolizing the "Four Deuce" gang); a "licc squad" tattoo on the side of appellant's neck;[1] and two Star of David tattoos (a known symbol of the Crips gang). Detective Nelson described the Four Deuce gang's criminal activity as involving every crime in the penal code, including robbery and murder.

---

[1] Hitting a lick means to rob someone. Crips use the spelling "licc" rather than "lick" to avoid putting c-k together as it apparently is understood to mean "Crip Killer."

Appellant's mother, a family friend, and a friend's mother testified for the defense. Appellant's mother testified that appellant's "42" tattoo referred to the bus stop in the neighborhood where he grew up. She also testified that appellant came to her sister's house on May 20, 2013, saying "I'm sorry, I didn't mean to do it," which she later figured out referred to this offense. The other witnesses for the defense testified appellant took good care of his family and was a good student. The jury sentenced appellant to 45 years' confinement and a $10,000 fine.

## DISCUSSION

### SUFFICIENCY OF THE EVIDENCE

In his first issue, appellant challenges the legal sufficiency of the evidence to support his conviction for murder. More particularly, appellant claims the evidence is insufficient to prove beyond a reasonable doubt he acted with the requisite culpable mental state to support a murder conviction.

#### STANDARD OF REVIEW

When conducting a legal-sufficiency review, a court must ask whether "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 318–19 (1979). In so doing, we assess the evidence "in the light most favorable to the prosecution." *Id.* This same standard applies equally to circumstantial and direct evidence. *Burden v. State*, 55 S.W.3d 608, 613 (Tex. Crim. App. 2001).

#### APPLICABLE LAW

A person commits the offense of murder if he intentionally or knowingly causes the death of an individual. TEX. PENAL CODE ANN. § 19.02(b)(1) (West 2011). A person acts intentionally when he has a conscious objective or desire to cause the result of his conduct. *Id.* § 6.03(a). A

–4–

person acts knowingly when he is aware that his conduct is reasonably certain to cause the result. *Id.* § 6.03(b). Proof of a requisite culpable mental state is almost always proved by circumstantial evidence. *See Hernandez v. State*, 819 S.W.2d 806, 810 (Tex. Crim. App. 1991).

### THE EVIDENCE

Appellant claims his statements to the investigating detective, which were introduced into evidence at trial, conclusively establish he did not intentionally or knowingly kill Cartojan. The statements upon which appellant relies are he reacted to Cartojan hitting him by grabbing the gun in his waistband when he thought he was falling to the ground, the gun discharged once, and he did not know if he had shot Cartojan.

The jury is the exclusive judge of the credibility of the witnesses and the weight to be given to their testimony. *See Bonham v. State,* 680 S.W.2d 815, 819 (Tex. Crim. App. 1984). The jury was free to reject all or any part of appellant's account of the events. *See id; Dumas v. State,* 812 S.W.2d 611, 615 (Tex. App.—Dallas 1991, pet. ref'd). Which they apparently did.

We now look to the remainder of the evidence and the relevant case-law to determine whether the jury could have found appellant acted intentionally or knowingly in causing Cartojan's death. Intent to commit murder may be shown by the use of a deadly weapon per se. *Gamblin v. State*, 476 S.W.2d 18, 19-20 (Tex. Crim. App. 1972). Appellant admits to drawing and firing the pistol. A pistol is a deadly weapon per se. *Id.* When a deadly weapon is fired at close range and death results, the law presumes an intent to kill. *Stills v. State*, 492 S.W.2d 478 (Tex. Crim. App. 1973). The evidence shows Cartojan ran out to the alley after he and Kannapas discovered someone was trying to steal his car. Kannapas heard a pop shortly thereafter. She did not hear any arguing or struggle before the gun fired, but she heard Cartojan say, "I've been shot" after she heard the pop. Appellant was the individual who shot Cartojan, and he shot him at close range. This evidence is sufficient to support a finding appellant acted with the requisite

culpable mental state to support his conviction of murder. Accordingly, we overrule appellant's first issue.

## IDENTIFICATION OF APPELLANT AS A GANG MEMBER

In his second issue, appellant argues the trial court abused its discretion in admitting evidence of gang membership, affiliation, or association during the punishment phase of trial because he was not properly identified as a gang member under article 61.02 of the Texas Code of Criminal Procedure. For the reasons set forth herein, we do not agree with appellant.

At the outset, we note article 61.02 does not control whether evidence concerning gang affiliation is admissible. That provision governs the creation of "an intelligence database for the purpose of investigating or prosecuting the criminal activities of criminal combinations or criminal street gangs." TEX. CODE CRIM. PROC. ANN. art. 61.02 (West Supp. 2014); *Garcia v. State*, 239 S.W.3d 862, 866 (Tex. App.—Houston [1st Dist.] 2007, pet. ref'd). Appellant was not investigated for, tried for, or convicted of a gang-related crime. The restrictions outlined in article 61.02, including the existence of two identifications of the individual being a criminal street gang member in cases where there has not been a judgment of participation in a criminal street gang or a self-admission of gang membership during a judicial proceeding, apply only to the collection of gang-related information for the database, not to the admissibility of gang-related information during the punishment phase of a trial. *See id.* Notwithstanding this fact, the State satisfied at least two of the identification criteria set forth in article 61.02.[2]

During the punishment phase of trial, the State presented testimony from Detective Nelson, a member of the U.S. Marshal's task force and the Dallas Police Department gang unit. He explained that he had been in the gang unit for seventeen years and that he was the North

---

[2] More particularly, the State presented evidence of appellant's criminal street gang tattoos and association with a known gang member, as well as documentation of appellant as a member of Four Deuce with the Dallas County Juvenile Department.

Director of the Texas Gang Investigative Association. Detective Nelson testified that appellant was not a documented gang member with the Dallas Police Department, but he was documented with the Dallas County Juvenile Department as a member of "Four Deuce." Detective Nelson further testified about appellant's extensive tattoos and their gang-related significance, specifically a "South Dallas" tattoo on his face and a tattoo of a street address located in south Dallas where members of the Four Deuce gang hang out, a tattoo stating "Licc squad," referring to "a group of men, a group of guys who get together, and their whole purpose is to hit licks, commit robberies, commit felonies," two Star of David tattoos, which he knew to be a symbol of Crip gangs, and a "42" tattoo, which was the "actual name of the gang in South Dallas." Detective Nelson also testified that Ryan Norris, a person with whom appellant is associated, is a documented gang member with the Dallas Police Department. Based on his observations and experience, Detective Nelson testified that appellant "belong[ed] to the criminal street gang 4 Deuce." He further testified that the gang had "done everything from murder to kidnapping to robbery . . . narcotics, they have done it."

Detective Nelson's expert-opinion testimony that certain of appellant's tattoos had distinctive meanings and were common in the Four Deuce gang supplied sound evidence of appellant's gang membership. *See Garcia,* 239 S.W.3d at 867 (gang tattoos alone were sufficient evidence of gang membership, despite Garcia's denial of membership); *Horton v. State*, No. 14–10–00253–CR, 2001 WL 742654, at *3 (Tex. App.—Houston [14th Dist.] March 3, 2011, pet. dism'd) (Squyres' expert testimony that certain of appellant's tattoos were common to members of the Five Deuce Hoover Crips provided sound evidence of appellant's gang membership); *Cabrera v. State,* No. 05–05–00450–CR, 2006 WL 952410, *2 (Tex. App.—Dallas Mar. 30, 2006, pet. ref'd) (testimony from police officer that distinctive notches shaved into defendant's eyebrows were common among members of certain gangs, testimony from

defendant's friend's mother that defendant talked about getting a teardrop tattoo, which had gang meaning that tattooed person had killed someone, and testimony that defendant associated with gang members, was enough to show gang membership). Accordingly, we overrule appellant's second issue.

## GANG INVOLVEMENT EVIDENCE

In his third issue, citing rule 404's restricted use of other crimes and wrongs evidence to prove character or act in conformance therewith, appellant asserts that the opinion testimony of Detective Nelson should have been excluded either because it lacked relevance, or any probative value it had was substantially outweighed by the danger of unfair prejudice. We disagree with both assertions.

Appellant's reliance on rule 404 is misplaced. Article 37.07 of the code of criminal procedure controls the admission of evidence at the punishment phase and expressly allows evidence of the defendant's character and other bad acts, notwithstanding rule 404's restrictions. TEX. CODE CRIM. PROC. ANN. art. 37.07, § 3(a)(1). As a general rule, evidence of a defendant's gang affiliation and the violent activities of that gang are relevant and admissible at the punishment phase to show the defendant's character. *Beasley v. State,* 902 S.W.2d 452, 456 (Tex. Crim. App. 1995); *Jackson v. State*, Nos. 05–13–00579–CR & 05–13–00580-CR, 2014 WL Tex. App. LEXIS 3955171, at *3 (Tex. App.—Dallas Aug. 14, 2014, no pet.) (mem. op.). The evidence need not link the accused to the bad acts or misconduct generally engaged in by gang members, so long as the fact finder is (1) provided with evidence of the defendant's gang membership, (2) provided with evidence of character and reputation of the gang, (3) not required to determine if the defendant committed the bad acts or misconduct, and (4) asked only to consider reputation or character of the accused. *See id.* at 457. Evidence of the types of activities the gang is engage in is not restricted to the particular crime for which the defendant is

found guilty. It is essential for the jury to know the types of activities the gang generally engages in so that they can determine if the defendant's gang membership is a positive or negative aspect of his character, and subsequently his character as a whole. *Broadnax v. State*, No. AP–76207, 2011 WL 6225399, at \*15 (Tex. Crim. App. Dec. 14, 2011).

Through Detective Nelson's testimony, the State established evidence of appellant's gang membership, evidence of the activities of the gang generally, and evidence of the character and reputation of the gang. The State did not ask Detective Nelson for evidence linking the appellant to specific bad acts or misconduct, nor did the State ask the jury to consider anything beyond the appellant's reputation or character in light of his association with the gang. Thus, the State successfully fulfilled the *Beasley* requirements for admitting evidence of the appellant's gang membership, and we find that Detective Nelson's testimony was, indeed, relevant. *See Beasley*, 902 S.W.2d at 456.

Having determined that evidence of the appellant's gang membership was relevant, we are still left to determine whether its probative value outweighed its prejudicial effect. Rule 403 favors the admission of relevant evidence and carries a presumption that relevant evidence will be more probative than prejudicial. *Williams v. State,* 958 S.W.2d 186, 196 (Tex. Crim. App. 1997). "The term 'probative value' refers to the inherent probative force of an item of evidence—that is, how strongly it serves to make more or less probable the existence of a fact of consequence to the litigation—coupled with the proponent's need for that item of evidence." *Casey v. State,* 215 S.W.3d 870, 879 (Tex. Crim. App. 2007). " 'Unfair prejudice' refers to a tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." *Id.* at 880. It is only when a clear disparity exists between the degree of unfair prejudice of the offered evidence and its probative value that Rule 403 is applicable. *Davis v. State,* 313 S.W.3d 317, 331 (Tex. Crim. App. 2010).

Evidence of the appellant's gang membership was obviously unfavorable to the appellant, but it was not unfairly prejudicial. The State's gang evidence was narrowly tailored to the purpose allowed by article 37.07. It consisted of only nineteen pages of testimony of Detective Nelson and photos of the appellant's tattoos. In addition to Detective Nelson, the State called Cartojan's sister and girlfriend who testified about the devastating effect Cartojan's murder has had on them and Cartojan's family. The jury sentenced appellant to forty-five years' confinement when the punishment range permitted a sentence of ninety-nine years or life. Under these circumstances, the gang evidence was not so unfairly prejudicial that there was a clear disparity between the degree of the prejudice and its probative value. Accordingly, the trial court did not abuse its discretion in admitting evidence of appellant's affiliation with the "Four Deuce" gang and evidence of the activities of the gang. *See Jackson*, 2014 WL 3955171, at *4 ("trial judge did not abuse his discretion in admitting expert testimony on gang evidence and appellant's tattoos"); *Stewart v. State*, 995 S.W.2d 251, 256 (Tex. App.—Houston [14th Dis.] 1999, no pet.) (trial court did not abuse its discretion in admitting lyrics in defendant's notebook that were of a violent nature as character and reputation evidence at the punishment stage). We overrule appellant's third issue.

## CONCLUSION

Having resolved all of appellant's issues against him, we affirm the trial court's judgment.

/David J. Schenck/

DAVID J. SCHENCK
JUSTICE

DO NOT PUBLISH
TEX. R. APP. P. 47

141264F.U05



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

DEMUNTRA RASHARD GREEN,
Appellant

No. 05-14-01264-CR     V.

THE STATE OF TEXAS, Appellee

On Appeal from the 195th Judicial District
Court, Dallas County, Texas
Trial Court Cause No. F-1356459-N.
Opinion delivered by Justice Schenck.
Justices Evans and Whitehill participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

Judgment entered this 3rd day of November, 2015.